[Crim. No. 15268.  Second Dist., Div. Five.  Feb. 5, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
JESSE GARCIA RAMIREZ, Defendant and Respondent.

## COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

Albert Flaxman, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

KAUS, P. J.—This is an appeal by the People (Pen. Code, § 1238, subd. 1) from an order granting defendant's motion under section 995 of the

Penal Code to set aside an information which charged him with possession of marijuana in violation of section 11530 of the Health and Safety Code. The court never ruled on defendant's companion motion under section 1538.5 of the Penal Code,[1] considering it moot after the section 995 motion had been granted.

The only question on appeal is whether a ruse, by which the arresting officer gained entry into defendant's home, invalidated a later search and seizure.

Primo Orosco, a narcotic agent for the State of California, testified that on March 1 or 2, on March 4, and again late on the morning of March 5, 1968, he received information from a reliable informer concerning certain narcotics transactions. The information was that a person by the name of Jesse Ramirez was selling cans of marijuana for $10 from his residence at 1225 South Fetterly and that he had marijuana in his possession on March 5, 1968. The informer had personal knowledge of these facts.

Armed with this information Orosco proceeded to 1225 South Fetterly at about 1 p.m., March 5, 1968. He first made a trip to the door of the residence for the purpose of observing the scene and the "general layout." He found the front door open and a screen door closed but unlatched. He knocked on the door and rang the bell. Defendant came to the door. Orosco asked him if he knew a certain fictitious person who, Orosco said, was a gardener for whom he was looking. Defendant, not surprisingly, stated he did not know the person.

Orosco left and conferred with other officers who apparently had accompanied him to the location. About 10 minutes later, Orosco returned to the door of defendant's residence and again knocked and rang the bell. Defendant came to the door and Orosco told him he wanted to talk to him. Defendant opened the screen door and said, "Come on in." Orosco walked in. He then displayed his badge and identified himself as a state narcotic agent. Defendant stated he did not know why Orosco was there, that he knew nothing about narcotics.

Orosco told defendant that he had received information that defendant was selling marijuana from the residence and had marijuana in his possession. He advised defendant of his constitutional rights to remain silent and to representation by counsel and ascertained that defendant understood these rights. (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Orosco then asked defendant if he wished to talk and defendant said he did. Orosco asked defendant if he had any narcotics in the house. This time defendant admitted that he did. The officer

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

asked him what he had and defendant replied that he had four marijuana cigarettes hidden under a cloth on top of a dresser drawer in the bedroom.

At that time Orosco advised defendant that he was under arrest for possession of marijuana. He then proceeded to the bedroom and searched the area defendant had indicated. He found nothing. He then conducted a further search of the dresser drawer and found two plastic bags containing marijuana, six hand-rolled cigarettes and one seconal tablet. These items were introduced into evidence at the preliminary hearing.

## DISCUSSION

The order setting aside the information must have been based on the trial court's finding that the marijuana was illegally seized. We cannot agree that this appears as a matter of law, as it must on a 995 motion. Conceivably, further factual exploration of the circumstances surrounding the arrest at a hearing on a 1538.5 motion may justify the granting of such a motion and a later dismissal of the action. We, however, only deal with the order that was made.

Orosco had information from a tested informer based on the informer's personal knowledge. If that information, in itself, justified the arrest, Orosco could have arrested defendant as soon as he answered the doorbell.[2] Since that arrest would have taken place before the decision in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], it would have authorized a search of the dwelling. (*People* v. *Edwards,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713]; *People* v. *Pressley,* 242 Cal.App.2d 555, 559 [51 Cal.Rptr. 563]; *People* v. *Rodriguez,* 238 Cal.App.2d 682, 690 [48 Cal.Rptr. 117].) Having the right to enter and search without permission it becomes immaterial that permission was obtained by a ruse.

There was no violation of section 844 of the Penal Code. None of the purposes and policies served by the rule forbidding an unannounced entry to effect an arrest (*Duke* v. *Superior Court,* 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628]) are violated when the entry is consensual, regardless of whether the consent was fraudulently obtained. (*Leahy* v. *United States,* 272 F.2d 487, 489-490.)

---

[2]The officer was never asked whether it was his intention to arrest defendant when he went to the house the second time. Although he appears to have been convinced that his tested informer had given him sufficient information to arrest a Jesse Ramirez at the address in question, the record does not show that Orosco knew, or attempted to determine, whether the person who opened the door for him actually was Ramirez. Of course as soon as he obtained a confession that that person was in possession of marijuana, he knew that he had the right to arrest him, whoever he was.

The trial court's order appears to have been based on a finding that the officer did not think that he had the right to arrest defendant when he approached the house for the second time. From this premise it was apparently concluded that the officer had none of the rights he would have had, had he intended to make an arrest. While we doubt the validity of the conclusion, (*Klingler* v. *United States,* 409 F.2d 299, 304-305) we shall assume it to be correct. The question then becomes whether permission to enter a private home, obtained by subterfuge, inevitably invalidates everything that takes place after the entry. No narrower rule could justify the order in the case at bar, for if the interrogation, preceded by a constitutionally adequate warning and followed by a full confession, had taken place with defendant on one side of the screen door and Orosco on the other, no possible objection to the search which followed the actual arrest occurs to us.

■ Of course where an entry obtained by trickery brings officers into a room where they have no right to be and they then observe contraband in plain sight or conduct a search (*People* v. *Reeves,* 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393]; *People* v. *Miller,* 248 Cal.App.2d 731, 736-740 [56 Cal.Rptr. 865]; cf. *Gouled* v. *United States,* 255 U.S. 298, 304-306 [65 L.Ed. 647, 650-651, 41 S.Ct. 261]) the seizure of whatever is seen or found is the immediate product of the ruse. ■ Nothing of the kind can be said in the case at bar, at least as a matter of law on a motion to set aside the information. Certainly the magistrate was entitled to conclude that it was not the fact that the conversation between Orosco and defendant during which defendant confessed the possession of marijuana took place indoors rather than on the front porch, which produced the confession.

■ The Supreme Court of the United States recognizes no blanket prohibition against trickery in law enforcement, even where the trickery advances the prosecution's case. (*Lewis* v. *United States,* 385 U.S. 206, 209 [17 L.Ed.2d 312, 315, 87 S.Ct. 424]; *Hoffa* v. *United States,* 385 U.S. 293, 311 [17 L.Ed.2d 374, 387, 87 S.Ct. 408]; *Osborn* v. *United States,* 385 U.S. 323 [17 L.Ed.2d 324, 87 S.Ct. 429]; cf. *Sabbath* v. *United States,* 391 U.S. 585, 590, fn. 7 [20 L.Ed.2d 828, 833, 88 S.Ct. 1755]; see also *People* v. *Ketchel,* 59 Cal.2d 503, 519-520 [30 Cal.Rptr. 538, 381 P.2d 394]; *People* v. *Quilon,* 245 Cal.App.2d 624, 628 [54 Cal.Rptr. 294]; *People* v. *Boulad,* 235 Cal.App.2d 118, 126 [45 Cal.Rptr. 104].) Certainly, where it is not even shown that trickery resulted in any benefit to the police, it cannot taint a prosecution.

The order granting defendant's motion under section 995 is reversed. Defendant, of course, remains free to pursue his motion under 1538.5, which is no longer moot.

Stephens, J., and Reppy, J., concurred.