[Civ. No. 34390. Second Dist., Div. One. Mar. 6, 1970.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ALLIE PROCTOR et al., Real Parties in Interest.

COUNSEL

Evelle J. Younger, District Attorney, Harry Wood, Maurice H. Oppenheim and Arnold Guminski, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Hank Di Roma for Real Parties in Interest.

**OPINION**

**THOMPSON, J.**—The trial court having granted a motion to suppress evidence pursuant to Penal Code section 1538.5, the People have applied for a writ of mandate to review that determination.

*Facts*

At 12:15 a.m., on November 17, 1968, Officer Robert E. Kimball of the Los Angeles Police Department saw Ronnie Lawson, a juvenile, drop a handrolled cigaret. Kimball retrieved the cigaret and determined that it appeared to be marijuana. He then arrested Lawson. Lawson, after having been advised of his rights, admitted that the cigaret contained marijuana and agreed to show the police where he had obtained the contraband. Lawson's reliability as an informer was untested.

Lawson, accompanied by uniformed police officers, went to a multiple dwelling similar to an apartment house at 1615 St. Andrews. The officers had no arrest or search warrant. Lawson went to the door of the building while the officers remained around a corner of the building, a distance about 8 feet away from the door. Lawson knocked on the door. A woman's voice

answered, "Who's there?" Lawson said, "I want to buy some stuff[1] for my friends. I want to talk to my man James or Otis." The woman's voice replied, "How much do you want?" Before Lawson answered, the door was opened by the woman who said, "Come on in." Lawson entered the building and the officers followed without knocking, identifying themselves or stating their purpose.

Inside the entry of the dwelling at 1615 St. Andrew, there is a hallway. A doorway leads from the hallway into the living room of the premises occupied by real party in interest Allie Proctor. The officers saw Miss Proctor and the other real party in interest, Newbon, in the living room. They arrested Miss Proctor and Newbon for furnishing marijuana to a minor. A search of the apartment conducted incident to the arrest discovered 21 wax-paper bags containing marijuana.

Real parties in interest moved in the trial court to suppress evidence of the marijuana discovered in the apartment. The trial court, while accepting the testimony of the officers as credible and as establishing the controlling facts, granted the motion to suppress upon the basis of a failure of the police to comply with Penal Code section 844. The People then filed their petition for a writ of mandate seeking action of this court reviewing and annulling the trial court's suppression of evidence.

### Issue

The evidence of the marijuana which was suppressed by the trial court is the product of a search conducted prior to the decision of the United States Supreme Court in *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. Real parties in interest do not contend that it is not the product of a search incident to an arrest made with probable cause. The only issue thus presented to us is the application of the "knock and explain" requirement of Penal Code section 844 to the particular fact situation here present.

### Section 844

█ Penal Code section 844 provides in pertinent part: "To make an arrest, . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which [he has] reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired." While section 844 is phrased in permissive terms, it is construed as codifying a common law exception to a general rule which precludes a breaking by police officers in order to effect an arrest. (*People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1,

---

[1]Translated from street language, "stuff" means marijuana.

437 P.2d 489]; see *People* v. *Gastelo,* 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706].) ▪▪ Violation of the general rule renders evidence obtained in any resulting search inadmissible on the theory that its admissibility would violate Fourth Amendment rights. (*People* v. *Gastelo, supra.*)[2]

▪ The exclusionary rule based upon a failure of compliance with the provisions of Penal Code section 844 applies only where there has been a breaking. The word "break" in the context of section 844 is a term of art which includes more than the physical breaking of a door or window. It thus encompasses the opening of an unlocked screen door (*People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489]; see also *Sabbath* v. *United States,* 391 U.S. 585 [20 L.Ed.2d 828, 88 S.Ct. 1755]), and entry through an open door "at nighttime when the occupant apparently is asleep." (*People* v. *Bradley,* 1 Cal.3d 80, 87 [81 Cal.Rptr. 457, 460 P.2d 129].)

We conclude that the facts present in the record of the case at bench do not disclose a "breaking" within the expanded definition of the term. Our conclusion is impelled by analysis of decisional law and by the rationale of the rule excluding illegally obtained evidence.

### Decisional Law

Within the past year, the United States Court of Appeals for the Ninth Circuit has considered a factual situation strikingly similar to that present in the case at bench. (*Ponce* v. *Craven,* 409 F.2d 621.) There police officers had probable cause to believe that the defendant possessed narcotic paraphernalia in his motel room. They prevailed upon the manager of the motel to announce through a closed door that there was a call on the motel office telephone for the female companion of the defendant. The companion opened the door and the officers entered without knocking or announcing their purpose. The officers arrested the defendant and conducted an incidental search which disclosed one-quarter ounce of heroin. The court rejected a contention that the heroin had been obtained in violation of Penal Code section 844. In so doing, it stated (*Ponce* v. *Craven, supra,* 409 F.2d 621, 626): "The employment of a ruse which results in the occupant of a dwelling voluntarily opening the door and thereby allowing officers to enter without announcement of purpose, is not a breaking, and, therefore, not violative of California arrest law." (See also *People* v. *Coleman,* 263 Cal.App.2d 697, 704 [69 Cal.Rptr. 910]; *People* v. *Hamilton,* 257 Cal. App.2d 296, 302 [64 Cal.Rptr. 578]; *People* v. *Brooks,* 234 Cal.App.2d 662, 679 [44 Cal.Rptr. 661].)

---

[2]The rule requiring notice and explanation prior to a breaking in to accomplish an arrest is, however, not an absolute one, and compliance with the notice and demand requirement is excused if exigent circumstances are present. (*People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6].)

▆ The record in the case at bench discloses that the officers had probable cause to arrest the occupants of the building before its door was opened. They had been informed by the juvenile whom they had arrested that those occupants had supplied him with marijuana. The information from the juvenile was confirmed while it was still fresh by the conversation through the door of the premises ultimately searched. The response from within "How much do you want?" to the juvenile's statement: "I want to buy some stuff" was itself sufficient to raise a strong suspicion in a reasonable man that the responding occupant of the building possessed marijuana for sale.

The officers possessed of probable cause to arrest the occupant of the building were then authorized to employ a stratagem not involving force or a "breaking" to obtain entry irrespective of the provisions of Penal Code section 844. Once the door was opened in response to the stratagem, compliance with section 844 would have been an idle act, one not required by the statute. (See *People* v. *Carrillo,* 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377].)

The facts of the case at bench distinguish it from *People* v. *Reeves,* 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393] and similar cases which hold that a stratagem may not be employed to secure probable cause for arrest in the nature of a clear view of contraband obtained through a door opened in response to the ruse. Those cases involve the existence of probable cause to arrest and to make an incidental search. Here the officers already had that probable cause. Their stratagem was employed only to secure entry to make the arrest.

The case at bench is also distinguishable factually from *People* v. *Bradley,* 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129]. In *Bradley,* officers approached the defendant's residence at 3:15 a.m. By shining a flashlight through an open door, they ascertained that the defendant appeared to be asleep on a bed within the residence. The officers entered without knocking or explaining their presence and arrested the defendant for possession of marijuana. Our Supreme Court held that under the facts there present, the entry of the officers constituted a "breaking" within the meaning of Penal Code section 844 and that consequently the entry was illegal. The court rationalized its decision upon the surprise and consequent risk of violence inherent in the mode of entry employed. (*People* v. *Bradley, supra,* 1 Cal.3d 80, 88.)

The elements of surprise and possibility of violence present in the method of entry employed in the case at bench are of a totally different character from those present in *Bradley.* Here the surprise was not that someone had entered the dwelling but rather that the someone was a uniformed police officer rather than a customer for marijuana. Here, also, the possibility of

violence was only that inherent in any arrest of a felony suspect and not that flowing from the discovery by a sleeping occupant that an unidentified person is in his room.

### Rationale of Exclusionary Rule

■ The rule which excludes evidence obtained in an improper search is not designed to protect an innocent suspect against an unjust accusation. The doctrine has been developed as a means of enforcing Fourth Amendment rights of privacy and seeks to deter violations of those rights by penalizing society in its enforcement of the criminal law where a violation occurs. (*Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *Elkins* v. *United States,* 364 U.S. 206, 217 [4 L.Ed.2d 1669, 1677, 80 S.Ct. 1437].) The exclusionary rule must be recognized as strong medicine which improperly employed may have highly undesirable side effects. (See "The President's Page," 45 L. A. Bar. Bull. 95.) Extension of the rule to the facts of the case at bench would constitute an improper employment of it.

The right protected by Penal Code section 844, while substantial, is of a lesser magnitude than that protected by the more general requirement of probable cause for a search. The section in essence requires that the occupant of premises be given notice before the police break into it. Its purpose is to minimize "the consequences of an unannounced intrusion" and the consequent "resistance to the intruders and violent death or injury to them or others including innocent third parties." (*People* v. *Bradley,* 1 Cal.3d 80, 88 [81 Cal.Rptr. 457, 460 P.2d 129].) The purpose of section 844 is in no way served by a requirement that officers in the vicinity announce their presence and purpose to one who opens a door thinking that in doing so he is consummating a crime. That proposition is no less applicable where the officers by tactics short of entrapment give a suspect the opportunity to open the door to aid his criminal purpose.

Let the peremptory writ of mandate issue requiring the respondent superior court to annul its ruling of February 13, 1969, suppressing evidence in the criminal prosecution of the real parties in interest.

Wood, P. J., and Lillie, J., concurred.