[Civ. No. 26724. First Dist., Div. Two. June 22, 1970.]

In re ROBERT T., a Person Coming Under the Juvenile Court Law.
JAMES D. CALLAHAN, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
ROBERT T., Defendant and Appellant.

[Civ. No. 26725. First Dist., Div. Two. June 22, 1970.]

In re WILLIAM G., a Person Coming Under the Juvenile Court Law.
JAMES D. CALLAHAN, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
WILLIAM G., Defendant and Appellant.

(Consolidated Appeals.)

## COUNSEL

James D. Nunes, Public Defender, James C. Hooley, Chief Assistant Public Defender, and Ross R. Ryder for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, J.**—These consolidated appeals are from two orders of the juvenile court declaring the minor appellants wards of the court, pursuant to section 602 of the Welfare and Institutions Code (delinquency). The only contention is that the prosecution's case was based on evidence obtained as the result of unlawful search and seizure since the entry into their apartment was induced by a ruse.

██ The record reveals the following facts: Around January 16, 1969, the home of Mr. Marasco at 740 Madison Street in Albany, and the nearby apartment of Mr. Bagby at 935 Solano Avenue were burglarized. About three days later, one of the victims and the Albany police received anonymous letters consisting of words cut from newspapers and pasted on a blank piece of paper, stating that the thieves and goods could be found in apartment No. 6 at 935 Solano Avenue.

On January 21, 1969, Sergeant Melvin Boyd of the Albany Police Department contacted Mr. Turkmany, the owner of the apartment building at 935 Solano. After a conversation about the notes and the burglaries, both went to 935 Solano Avenue. First, they stopped at apartment No. 16, occupied by the manager, Mr. Bagby, and then proceeded to No. 6. Turkmany knocked on the door of No. 6 and appellant, Robert T., answered the door. As Turkmany knew the apartment had been rented to a Mr. Reeder, he asked if Reeder was at home. After Robert stated that Reeder did not live there any more, Turkmany introduced and identified himself as the landlord and introduced Sergeant Boyd (who was in plain

clothes) as "My friend, Joe." Sergeant Boyd did not correct the incorrect introduction or identify himself as a police officer.

Turkmany then indicated that since Reeder did not have the authority to sublet, he wanted to come in and check the apartment. Robert pushed the door to a nearly closed position and said: "Just a moment," then went back into the apartment. He returned in less than a minute, saying: "Yes, you can come in," and admitted Turkmany and Boyd.

As Turkmany and Boyd walked through the apartment, Boyd noticed a radio and a pair of binoculars that matched the description of these items taken in the two burglaries. Thereafter, Turkmany and Boyd left. Sergeant Boyd immediately contacted the district attorney's office in Berkeley and secured complaints and arrest warrants. Later that day, appellants were arrested, admonished of their rights at the police station, and made statements admitting the burglaries. Subsequently, petitions pursuant to section 602 of the Welfare and Institutions Code were filed accusing appellants of violations of section 459 of the Penal Code.

At the hearing, appellants objected to the testimony of what Boyd saw in the apartment on the ground that entry had been obtained by trick or subterfuge. The court treated the objection as a continuing one pertaining to both minors and permitted the testimony, subject to motion to strike. Subsequently, the court denied the motions to strike all of the prosecution's testimony and entered its order declaring both appellants to be delinquent and subject to section 602.

■ As it is uncontroverted that the entry into apartment No. 6 was not made pursuant to either a warrant of arrest or search, the burden is on the prosecution to show proper justification for the search (*People v. Henry,* 65 Cal.2d 842 [56 Cal.Rptr. 485, 423 P.2d 557]; *People v. Kanos,* 70 Cal.2d 381 [74 Cal.Rptr. 902, 450 P.2d 278]). ■ It is well settled in this state that an entry obtained by trick, ruse or subterfuge is illegal and that any prosecution based on such an illegal entry cannot be allowed to stand (*People v. Reeves,* 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393]).

■ The People argue that the instant case is distinguishable from *Reeves* as appellants here consented to the entry. This contention, however, is entirely without merit as it is clear that the consent was based on Turkmany's ruse of introducing Sergeant Boyd only as his "friend Joe." It is uncontroverted that Sergeant Boyd acquiesced and participated in the deception as he was dressed in plain clothes, did not identify himself as a police officer, or correct Turkmany's obviously erroneous introduction. The People rely on *People v. Samuels,* 229 Cal.App.2d 351 [40 Cal.Rptr. 290], and *People v. Coleman,* 263 Cal.App.2d 697 [69 Cal.Rptr. 910].

However, neither of these cases is pertinent, as in *Samuels* the officers had reasonable probable cause to arrest prior to the entry, and in *Coleman* knowledge of an outstanding felony arrest warrant. In the instant case, as in *Reeves*, there was no reasonable probable cause for the arrest of the occupants of apartment No. 6 until after the burglarized items were seen in the apartment subsequent to the entry based on a subterfuge. The People, again citing *Samuels*, argue that since the deception arose in the mind of Turkmany and not Sergeant Boyd, they are not bound thereby. However, the significant fact is not the source of the deception but the fact that Sergeant Boyd acquiesced in what he knew to be a deception. If Boyd had been in uniform or had identified himself as a police officer, then a consent could be implied from the record. However, we find no basis for consent on the facts before us.

■ As stated in *People* v. *Reeves, supra,* at page 275: "The rule that requires a reversal where the incriminatory evidence has been secured by means of an illegal search is not a mere technical rule of evidence. It is based on the fundamental concept that such a rule is required in order to give substance to the rights conferred by the provisions of our federal and state Constitutions prohibiting such seizures. (U.S. Const., 4th Amend., see *Mapp* v. *Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933]; Cal. Const., art. I, § 19, see *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].)

"It is, of course, highly commendable that law enforcement officials should desire that all persons violating the law should be arrested and punished. But it is of even greater importance, that in seeking to attain that highly desirable end, law enforcement officials should not trample upon or disregard fundamental constitutional rights. The end does not justify the means. When the desire to punish the lawbreaker runs afoul of constitutional rights, it is the former that must give way. The courts should be alert to see that this is so. It is a fundamental concept of our system of criminal justice that it is better for society that a few criminals escape, than it is for government to use illegal means to accomplish their convictions. For that reason the court cannot and should not struggle to escape the obvious mandate of the constitutional provisions. That is the problem here involved. ■ Constitutional considerations determine that the search and arrests were illegal. Therefore, convictions based upon the illegal search and arrests cannot stand."

The federal cases on which *Reeves* relies state the rule even more broadly. In *Gouled* v. *United States,* 255 U.S. 298, 306 [65 L.Ed. 647, 651, 41 S.Ct. 261], the language is as follows: "Without discussing them, we cannot doubt that such decisions as there are in conflict with this conclusion

are unsound, and that, whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the Government of the United States by stealth, or through *social acquaintance, or in the guise of a business call,* and whether the owner be present or not when he enters, any search and seizure subsequently and secretly made in his absence, falls within the scope of the prohibition of the Fourth Amendment, . . ." (Italics added.)

The orders in both matters are reversed.

Shoemaker, P. J., and Agee, J., concurred.