[Crim. No. 20239. Second Dist., Div. One. Dec. 28, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
LOUIS A. VELOZ, Defendant and Respondent.

500

## COUNSEL

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, Joseph P. Busch, Jr., District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, James L. McCormick, Dennis M. Gallagher and Leighton A. Nugent, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**LILLIE, J.**—Defendant was charged with possession of heroin (§ 11500, Health & Saf. Code). His motion to suppress evidence pursuant to section

1538.5, Penal Code, was granted, and dismissal of the cause was ordered (§ 1385, Pen. Code). The People appeal from order of dismissal.

Prior to February 2, 1971, Deputy Winston had a conversation with State Parole Officer Parker who asked him if he knew a person by the name of Louis Veloz; he replied that he did and knew where he was; Parker told him that Veloz was "running from the program, State parole" and had been avoiding contact with him for approximately a year. Around 11:30 a.m. on February 2, Winston and two other deputies in plain clothes went to defendant's residence; he went alone to the front door and knocked; defendant's wife answered; he told her he was a carpet salesman sent by the welfare office to recarpet her home, whereupon she admitted him. He testified that he used this ruse because "I was told by Mr. Parker that the defendant was a rabbit, or that he had run before and that I wouldn't get in by identifying myself." Immediately upon entering he saw defendant lying asleep in a bed three or four feet from the front door; upon pre-arranged signal the other two deputies entered, one of whom awakened defendant; Deputy Winston arrested him for violation of section 3151, Welfare and Institutions Code, and although he did not have a parole warrant with him the number, N27924, was given to him by Parker. Defendant, who was not dressed, asked Deputy Asendorf for his pants; as the deputy handed them to him he searched them for weapons and found several balloons of heroin in a pocket; Deputy Winston advised defendant he was under arrest for possession of heroin, and of his constitutional rights. Defendant told him, " 'You might as well take everything,' " walked over and gave the officer a hypodermic outfit.

The trial court granted the motion to suppress on the basis of *People* v. *Rosales*, 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], and *In re Robert T.*, 8 Cal.App.3d 990 [88 Cal.Rptr. 37].

Preliminarily the trial judge expressly found that "there was reasonable and just cause to go to the defendant's residence and apprehend him," and it is apparent from the record that the parole officer authorized and requested defendant's apprehension as a California Rehabilitation Center parole violator; while he was not at the scene of defendant's subsequent detention, his physical presence there was not necessary to the carrying out of such request. (*People* v. *Giles*, 233 Cal.App.2d 643, 647 [43 Cal.Rptr. 758].) Thus, *In re Robert T.*, 8 Cal.App.3d 990 [88 Cal.Rptr. 37], is distinguishable. Therein the officers had "no reasonable probable cause for the arrest of the occupants of apartment No. 6 until after the burglarized items were seen in the apartment subsequent to the entry based on a subterfuge." (P. 994.) In the case at bench probable cause for arrest existed prior to and apart from entry of the deputies to defendant's residence.

■■ While compliance with section 844, Penal Code,[1] is not excused even though the person arrested is a parole violator (*People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489]), section 844 does not apply here. The evidence in *People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], established a "breaking" within the meaning of section 844, Penal Code, the officers having entered the premises by opening an unlocked screen door. In the instant case Deputy Winston did not open the door and no force or violence was used in his entry; instead he employed a ruse causing defendant's wife to open the door and admit him. Thus, there was no "breaking" within the meaning of the statute; the exclusionary rule based upon failure of compliance with the provisions of section 844 applies only where there has been a "breaking." (*United States* v. *Beale* (5th Cir. 1971) 445 F.2d 977, 978; *People* v. *Superior Court* [*Proctor*], 5 Cal. App.3d 109, 113 [84 Cal.Rptr. 778].) *People* v. *Superior Court* [*Proctor*], decided by this division of the court, also involved an entry by ruse or subterfuge. An officer, having arrested a minor for possession of marijuana and the minor having agreed to show him the place where he obtained it, went with him to defendant's home where the minor knocked and called out "I want to buy some stuff for my friends. I want to talk to my man James or Otis," whereupon the occupant admitted him and the officers followed without knocking, identifying themselves or stating their purpose; they arrested Proctor for furnishing marijuana to a minor, then searched the premises. We concluded that the evidence failed to disclose a "breaking" within the expanded definition of the term, relying primarily on *Ponce* v. *Craven* (9th Cir. 1969) 409 F.2d 621. Therein officers had probable cause to believe defendant possessed narcotic paraphernalia in his hotel room and prevailed upon the manager to announce through a closed door there was a telephone call for defendant's female companion; as she opened the door the officers entered the room without knocking or announcing their purpose, arrested defendant and conducted a search which disclosed contraband. The court rejected a contention that the heroin had been obtained in violation of section 844, Penal Code. We quoted from 409 F.2d at page 626, " 'The employment of a ruse which results in the occupant of a dwelling voluntarily opening the door and thereby allowing officers to enter without announcement of purpose, is not a breaking, and, therefore, not violative of California arrest law.' (See also *People* v. *Coleman,* 263 Cal. App.2d 697, 704 [69 Cal.Rptr. 910]; *People* v. *Hamilton,* 257 Cal. App.2d 296, 302 [64 Cal.Rptr. 578]; *People* v. *Brooks,* 234 Cal.App.2d 662, 679 [44 Cal.Rptr. 661].)" (P. 113.)

---

[1]Section 844 provides: "To make an arrest, . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

Moreover, "The officers possessed of probable cause to arrest the occupant of the building were then authorized to employ a strategem [*sic*] not involving force or a 'breaking' to obtain entry irrespective of the provisions of Penal Code section 844. Once the door was opened in response to the strategem [*sic*], compliance with section 844 would have been an idle act, one not required by the statute. (See *People* v. *Carrillo*, 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377].)" (*People* v. *Superior Court* [*Proctor*], 5 Cal.App.3d at p. 114.)

Respondent relies on *People* v. *Mesaris*, 14 Cal.App.3d 71 [91 Cal.Rptr. 837]. A majority of a divided court held that police entry to the premises through a door opened by the occupant for the ostensible purpose of seeing a refrigerator repairman working in the kitchen, which was different from their real purpose, was a nonconsensual entry because of trickery, thus, if entry was made for the purpose of arrest it was subject to the requirements of section 844. (P. 75.) However, it appears from the *Mesaris* opinion that there was no probable cause to arrest the occupant prior to entry by employment of a ruse although the court did not decide the issue, but it held that in any event the officers' entry was subject to the provisions of section 844. At this point the court commented: "We realize that this holding apparently conflicts with that of *People* v. *Superior Court*, 5 Cal.App.3d 109, 113 [84 Cal.Rptr. 778]. It is, however, in accord with the holding of *People* v. *Reeves*, 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393] that 'It is well settled by both federal and state decisions that "an entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid." ' " (P. 75, fn. 2.) Factually *Mesaris* is distinguishable from *People* v. *Superior Court* [*Proctor*], 5 Cal.App.3d 109 [84 Cal.Rptr. 778], because there was no probable cause to arrest the occupant prior to entry by use of a subterfuge; and for that same reason *Mesaris* is similar to *People* v. *Reeves*, 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393], which holds that a stratagem may not be employed to secure probable cause for arrest by a clear view of contraband through a door opened in response thereto. Here, as in *People* v. *Superior Court* [*Proctor*], 5 Cal.App.3d 109, 114 [84 Cal.Rptr. 778], the officers already had probable cause to arrest defendant before entering the premises, and their stratagem was employed solely to secure entry in order to make the arrest.

Respondent also relies on *People* v. *Bradley*, 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129], which involved quite a different situation. At 3:15 a.m. the officers, having shined a flashlight through an open door ascertaining defendant was asleep in bed, entered without knocking or explaining their presence, and arrested him for possession of marijuana. Our Supreme Court held that the entry constituted a "breaking" within the meaning of section 844 and rationalized its decision upon the surprise and

consequent risk of violence inherent in the mode of entry employed (p. 88). The purpose of section 844 is essentially twofold—first, to safeguard to the fullest possible extent the privacy of the citizen in his home and second, to preclude violent confrontations between startled householders and police officers whose entry is unannounced and unexplained. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 292-293 [78 Cal.Rptr. 504, 455 P.2d 432].) Under the circumstances neither purpose was frustrated by the conduct of the deputies here; the effect of the invasion of privacy was not increased by the absence of an opportunity to refuse admittance, neither was the risk of defendant's violent resistance to the deputy's entry heightened thereby. As we stated in *People* v. *Superior Court* [*Proctor*], 5 Cal.App.3d 109, at pages 114-115 [84 Cal.Rptr. 778]: "The elements of surprise and possibility of violence present in the method of entry employed in the case at bench are of a totally different character from those present in *Bradley*. Here the surprise was not that someone had entered the dwelling but rather that someone was a uniformed police officer rather than a customer for marijuana. Here, also, the possibility of violence was only that inherent in any arrest of a felony suspect and not that flowing from the discovery by a sleeping occupant that an unidentified person is in his room."

The order is reversed.

Wood, P. J., and Thompson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 16, 1972. Peters, J., Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.