[Crim. No. 29812. Second Dist., Div. Five. Jan. 26, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
WENDY RUDIN et al., Defendants and Respondents.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Roderick W. Leonard, Deputy District Attorneys, for Plaintiff and Appellant.

Jonathan M. Yost for Defendants and Respondents.

## OPINION

**HASTINGS, J.**—Respondents Wendy Rudin and Julian Wayne Green were charged by information with possessing heroin for sale (Health & Saf. Code, § 11351, subd. (a)). They successfully moved under Penal Code section 995 for an order setting aside the information. As authorized by Penal Code section 1238, subdivision (a)(1), the People appeal and contend: "Police may use subterfuge when they knock on a door and seek to serve a search warrant."

The People introduced the following evidence: At approximately 8 p.m. on April 23, 1976, Officer Terry Jones of the Glendale Police Department went to apartment 16 at 4141 Kling Street in Burbank to execute a search warrant for that residence. Officer Jones had previously been employed by the United States Postal Service and still possessed the uniform he had purchased for that occupation. He carried a letter which contained a postal certification (a "certified" sticker) and wore his postal uniform "[f]or a subterfuge to get the door open," prior to confronting the occupants with his true identity and purpose for being at the location.

Officer Jones knocked on the door which was opened by respondent Green. He indicated that he had a special delivery letter for respondent Rudin. Respondent Green said, "[s]ure, there she is over there . . . [c]ome on in." When Rudin exited the kitchen area of the residence and came into the living room, Officer Jones "stepped into the house, pulling [his] badge out at the same time, possibly two steps inside the house . . . [and] identified [himself] to her." Specifically, Officer Jones said, "Police officers. We are serving a search warrant." Officer Jones then "shoved" or "pushed" respondent Rudin toward another officer and prevented respondent Green from going into the bedroom. The search warrant was executed and eight heroin-filled balloons were found in the bedroom of the residence.

The People also introduced evidence that respondents lived in the apartment and that the heroin was, in the expert opinion of one of the officers, possessed for the purpose of sale.

In granting the Penal Code section 995 motion, the trial court said, "I think the action taken here of the subterfuge employed, followed by

rather violent action toward the two occupants of the premises by the officers was certainly a violation of [Penal Code] Section 1531."[1]

■ Officers who reasonably employ a ruse to obtain consent to enter a dwelling do not violate Penal Code sections 844 or 1531, even if they fail to announce their identity and purpose before entering. (*People* v. *Kasinger*, 57 Cal.App.3d 975, 978 [129 Cal.Rptr. 483]; *People* v. *Superior Court*, 5 Cal.App.3d 109, 113 [84 Cal.Rptr. 778]; *People* v. *Ramirez*, 4 Cal.App.3d 154, 157-158 [84 Cal.Rptr. 104].) In *Ramirez*, we pointed out at page 158 that ". . . where an entry obtained by trickery brings officers into a room where they have no right to be and they then observe contraband in plain sight or conduct a search [citations] the seizure of whatever is seen or found is the immediate produce of the ruse. Nothing of the kind can be said in the case at bar [or in the instant case], at least as a matter of law on a motion to set aside the information."[2] "Having the right to enter and search without permission it becomes immaterial that . . . [the opening of the door and the invitation to enter were] obtained by a ruse."[3] (*People* v. *Ramirez, supra,* p. 157; see also *People* v. *Salitter*, 55 Cal.App.3d 1046, 1048-1049 [128 Cal.Rptr. 149]; *People* v. *Veloz*, 22 Cal.App.3d 499, 501-504 [99 Cal.Rptr. 519].)

Respondents mistakenly rely upon *Parsley* v. *Superior Court*, 9 Cal.3d 934 [109 Cal.Rptr. 563, 513 P.2d 611], as authority for the proposition that an advance decision of the police to use subterfuge is analogous to or tantamount to a magistrate's inability to give advance authorization for a violation of Penal Code section 1531. However, *Parsley* rests upon the principle that the exigent circumstances necessary to excuse compliance with Penal Code section 1531 (that is, forcible unannounced entries) ". . . can be judged only in light of circumstances of which the officer is aware at the latter moment." (*Parsley, supra,* p. 940.) Such a

[1]Penal Code section 1531 provides as follows: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

[2]"Conceivably, further factual exploration of the circumstances surrounding the . . . [entry and execution of the search warrant] at a hearing on a 1538.5 motion may justify the granting of such a motion and a later dismissal of the action. We, however, only deal with the order that was made." (*People* v. *Ramirez, supra,* p. 157.)

[3]Respondents' argument, that the cases have only upheld the use of subterfuge in arrest context and are inapplicable to the execution of a search warrant, is not persuasive. We adhere to the view expressed by our Supreme Court that the provisions of Penal Code sections 844 and 1531, though worded differently are " 'identical in principle.' " (*Greven* v. *Superior Court*, 71 Cal.2d 287, 292, fn. 6 [78 Cal.Rptr. 504, 455 P.2d 432].) We perceive no valid basis for a distinction.

proposition has nothing to do with the propriety of using subterfuge to avoid all necessity for effecting a frightening or forcible unannounced entry.

█ Upon this court's request supplemental briefs were filed discussing the issue of whether or not federal law was violated when one of the officers posed as a postman and if so, whether such violation would invalidate the service of the search warrant.[4]

While it is admittedly difficult to state our rationale in the form of black-letter law, we do not believe that the impersonation of a letter carrier should vitiate the ensuing search, at least where, as here, the local postal official(s) knew of and cooperated in the deception.

The basic question is whether the purpose of the exclusionary rule—deterrence of unlawful police conduct (*Lockridge* v. *Superior Court,* 3 Cal.3d 166, 171 [89 Cal.Rptr. 731, 474 P.2d 683])—demands suppression of evidence found during the execution of a valid search warrant for the sole reason that the police gained entrance into the premises searched through a ruse which arguably involved a technical violation of a federal statute. Put differently: should a California court pay the price of rejecting probative evidence in order to deter California law enforcement personnel from violating a federal statute where the violation does not directly affect the legality of the search, but only goes to the collateral issue of the manner in which the premises searched were entered? We think not.

We appreciate that the exclusionary rule has also been justified by "the imperative of judicial integrity." (*Elkins* v. *United States,* 364 U.S. 206, 222 [4 L.Ed.2d 1669, 1680, 80 S.Ct. 1437, 1453]; see also *People* v. *Cahan,* 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513].) Were we, as the cliche goes, "writing on a clean slate," that rationale should outlaw any entrance gained by trickery, whether the subterfuge involves a violation of law or simple dishonesty. The fact is, however, that we have

---

[4]Title 18 United States Code section 912 states: "Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both."

Title 18 United States Code section 913 states: "Whoever falsely represents himself to be an officer, agent, or employee of the United States, and in such assumed character arrests or detains any person or in any manner searches the person, buildings, or other property of any person, shall be fined not more than $1,000 or imprisoned not more than three years, or both."

already lost our innocence in this area. (*People* v. *Superior Court, supra,* 5 Cal.App.3d 109, *Ponce* v. *Craven,* 409 F.2d 621.) The theory of these cases is, apparently, that sections 844 and 1531 of the Penal Code are designed to minimize the potential for violence inherent in forced entries and that trickery is simply another way of achieving that objective, however morally reprehensible trickery it may be. Whether these authorities are right or wrong, it seems that in this area the courts have no integrity left to lose.

█ The court's reason for granting the section 995 motion was not based, however, solely on the use of subterfuge. In effect, it said there was a violation of section 1531 because the subterfuge was followed "by rather violent action toward the two occupants." The testimony on this issue came from Officer Jones who stated: "I pushed the girl (Wendy Rudin) towards the front door because I knew Investigator Pratt was coming up the stairs and into the doorway, and I knew that she would be maintained, and I went after the male defendant . . . who was in the kitchen area by the hallway . . . I told him to stay where he was and I grabbed him." Officer Jones was then asked if he observed officers showing a copy of the search warrant to defendants. He answered, "Yes. I believe I did. . . . When the apartment was secured as far as checking to see if anybody else was in the apartment, and they were sat down and they were showed a copy and allowed to read it." Counsel then asked Jones, "where were Mr. Green and Miss Rudin taken to sit down . . ." and he answered, "[i]n the living room area." The violence, if indeed there was any, occurred after the ruse had accomplished its purpose, namely, safe entry into the premises. It was not related to a section 1531 violation. In *People* v. *Superior Court, supra,* 5 Cal.App.3d 109, 114-115, the court said: "The officers possessed of probable cause to arrest the occupant of the building were then authorized to employ a strategem not involving force or a 'breaking' to obtain entry irrespective of the provisions of Penal Code section 844. Once the door was opened in response to the strategem, compliance with section 844 would have been an idle act, one not required by the statute. (See *People* v. *Carrillo,* 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377].) . . . [¶] The elements of surprise and possibility of violence present in the method of entry employed in the case at bench are of a totally different character from those present in *Bradley.* Here the surprise was not that someone had entered the dwelling but rather that the someone was a uniformed police officer rather than a customer for marijuana. Here, also, the possibility of violence was only that inherent in any arrest of a felony suspect and not

that flowing from the discovery by a sleeping occupant that an unidentified person is in his room."

In our present case we do not believe the evidence supports a finding that the officers committed any violent physical act against either occupant. The so called violent act against Miss Rudin was to push her out of the way of Investigator Pratt, who was apparently traveling up the stairs at a rather fast pace. There was no testimony of violence against Green—merely that he was grabbed. As in *People* v. *Superior Court, supra,* the physical contacts between the officers and defendants were after the entry and the physical acts were aligned with the inherent hazards of containing the parties while executing a search pursuant to a search warrant. A statement in *People* v. *Bradley, supra,* 1 Cal.3d 80, 88, is also in point: "The burden of complying with the demand and explanation requirements of section 844 is slight, and in view of the special circumstances under which noncompliance with section 844 is excused, insistence upon compliance in the absence of those circumstances in a case like the instant one should not result in any undue impairment of lawful police action." Furthermore, even if we assume more violence was used than was necessary in executing the search warrant, it did not trigger the seizure of the heroin which was lawfully found during the search pursuant to the warrant.

The order setting aside the information is reversed.

Kaus, P. J., concurred.

STEPHENS, J.—I respectfully dissent.

To countenance the blatant violation of federal criminal sections (title 18 U.S.C. §§ 912, 913) is unconscionable. *People* v. *Ramirez* (1970) 4 Cal.App.3d 154 [84 Cal.Rptr. 104] and *People* v. *Superior· Court* (1970) 5 Cal.App.3d 109 [84 Cal.Rptr. 778] and others cited by the majority are overly extended in reaching for supportive authority. In fact, the underlying concept of such cases does not support the instant holding. In no case to which we have been directed is there criminal action involved in the ruse. Here the entry was made without compliance with Penal Code section 844 for the ruse made it nonconsensual.

146

Here the impersonation by the officer of a postman subjected him (if not all participants) to criminal prosecution, but the majority opinion's approval of the acts practically effect immunity.

In *People* v. *Williams* (1975) 51 Cal.App.3d 346, 350-351 [124 Cal.Rptr. 253], the court states:

"On June 10, 1788, John Marshall addressed the Virginia Convention called to ratify the Constitution of the United States: 'What are the favorite maxims of democracy? A strict observance of justice and public faith and a steady adherence to virtue. These, sir, are the principles of a good government. No mischief, no misfortune, ought to deter us from a strict observance of justice and public faith.' (Marshall on the Federal Constitution, in 3 The World's Famous Orations (1906) p. 144.)

"The agents of the government must observe the law in enforcing it.

" 'If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.' (Brandeis, J. dissenting in *Olmstead* v. *United States,* 277 U.S. 438, 485 [72 L.Ed. 944, 960, 48 S.Ct. 564, 66 A.L.R. 376].)

" 'It is morally incongruous for the state to flout constitutional rights and at the same time demand that its citizens observe the law.' (*People* v. *Cahan,* 44 Cal.2d 434, 446 [282 P.2d 905].)

" 'Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence.' (*Mapp* v. *Ohio,* 367 U.S. 643, 659 [6 L.Ed.2d 1081, 1092, 81 S.Ct. 1684, 84 A.L.R.2d 933].)"

The law *must* be that a search warrant may only be *legally served* and that was not done here.[1]

"The purpose of the exclusionary rule is to deter unlawful police conduct." (*Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166, 171 [89 Cal.Rptr. 731, 474 P.2d 683].) In the instant case, as distinguished from *Lockridge,* the warrant service was illegal (in *Lockridge* the warrant was subsequently found to be *insufficient*); the contraband was the direct product of the illegal entry; the very purpose of the illegal entry was to

---

[1]Officer Jones was not in possession of the search warrant at any time, and the purpose of his entry was stated by him to be "for the other officers to make the search."

obtain the evidence directly involved with the warrant. I cannot understand how the majority read *Lockridge* as supportive for the violation of law by the impersonating officer, which they approve.[2]

The entry and service of the warrant being the product of a federal penal violation, the order of the trial court should be affirmed.

Respondents' petition for a hearing by the Supreme Court was denied March 23, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

[2]It is not necessary here to determine whether a less offensive subterfuge, not involving a criminal act, would have been permissible.