[Crim. No. 33001. Second Dist., Div. Two. Feb. 14, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES TROY THOMPSON, Defendant and Appellant.

**COUNSEL**

Ron Minkin for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—Defendant was convicted in a nonjury trial of possessing heroin for sale on the basis of, inter alia, evidence that police officers found in excess of 27 grams of heroin in his residence. The evidence was seized pursuant to a search warrant. Defendant offered no defense.

On appeal defendant contends that the search warrant was improperly issued and executed and that the People should have been forced to disclose the identity of an informant whose information formed a major part of the basis for the issuance of the search warrant. We affirm.

### THE SEARCH WARRANT

Officer Kingsford of the Los Angeles Police Department presented an application for a search warrant to a magistrate on October 12, 1976. The application was based on the officer's affidavit which set forth the following pertinent facts.

(1) During the week of September 26, 1976, a confidential informant told Officer Kingsford that Jimmy Thompson, whom he described, sold heroin from his residence at 1889 South Curson in Los Angeles. The informant stated that he had over a period of time personally purchased heroin from Thompson and had seen quantities of the drug on the premises. His latest observation had been within the preceding two weeks.

The informant stated that a purchase could be arranged by dialing a particular telephone number, which number was provided to the officer. Although other persons lived in the house, the informant dealt only with Thompson. The informant described a vehicle used by Thompson.

(2) The officer verified Thompson's ownership of the car and the house and the registration of the telephone number to the house.

(3) Thompson was found to have an extensive arrest record including arrests for possession and sale of heroin.

(4) The informant placed a telephone call to the above mentioned number, which call was monitored by Officer Kingsford. The informant identified the voice at the other end as Thompson. The voice indicated in

the conversation that heroin was available for sale and that it was of a better quality than that previously purchased by the informant.

On the basis of the foregoing the magistrate found the requisite probable cause to believe that contraband would be found on the premises. A search warrant was issued on October 14, 1976, and served that same date.

In traversing the warrant and moving to suppress the evidence, defendant presented no evidence to contradict or impeach the facts as set forth in the affidavit. The question then is whether, as a matter of law, the magistrate's findings are unsupportable. (*People* v. *Aguilar*, 240 Cal.App.2d 502 [49 Cal.Rptr. 584]; *People* v. *Miller*, 85 Cal.App.3d 194 [149 Cal.Rptr. 204].) ██ The warrant is presumptively valid.

All intendments are to be resolved in favor of the magistrate's action. The affidavit must be read in a common sense fashion and in the light of matters which are of common knowledge. The ultimate test is whether the officer who stated his belief that contraband would be found on the premises was reasonable and justified in his reliance on what the informant told him. (*People* v. *Superior Court*, 6 Cal.3d 704 [100 Cal.Rptr. 319, 493 P.2d 1183]; *United States* v. *Ventresca*, 380 U.S. 102 [13 L.Ed.2d 684, 85 S.Ct. 741]; *United States* v. *Lucarz*, 430 F.2d 1051.) The magistrate so found and we agree.

The informant purported to speak with first hand knowledge. He had purchased heroin at the premises and had, on other occasions, seen quantities of the drug on the premises as recently as early September 1976.

Beyond that the officer had independent evidence that the informant was credible. The telephone number dialed was registered to the premises to be searched. The person who answered the telephone indicated that heroin was in fact available for sale at that time and Thompson, the occupant, had a record for narcotics arrest.

The affidavit satisfied both requirements of *Aguilar* v. *Texas*, 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] and *People* v. *Hamilton*, 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681]. ██ The magistrate was justified in concluding that from the information provided it was reasonably probable that contraband would be on the premises even though there had been a lapse of from 10 to 16 days between the officer's receipt of the

information and the application for the warrant. (*People* v. *Miller, supra,* 85 Cal.App.3d 194; *Alexander* v. *Superior Court,* 9 Cal.3d 387 [107 Cal.Rptr. 483, 508 P.2d 1131]; *People* v. *Scott,* 259 Cal.App.2d 268 [66 Cal.Rptr. 257].) The evidence indicated that Thompson was engaged in a continuing and ongoing activity.

## THE "KNOCK AND NOTICE" REQUIREMENT

■ Penal Code section 1531 requires that an officer, in executing a search warrant, announce his authority and purpose before forcibly entering a structure. That requirement serves to afford the occupant an opportunity to peaceably admit the officer and to avoid any unnecessary violence which a surprise forceful entry might precipitate. (*Greven* v. *Superior Court,* 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432].)

Penal Code section 1531, and its counterpart Penal Code section 844 which requires notice before entering to arrest, are codification of the common law. The common law also recognized exceptions to the requirement of "knock and notice" prior to making an entry for the purpose of effecting an arrest or service of legal process. Strict compliance with the requirement is excused where the risk of danger to the officer would be increased by compliance, where it appears that there is a strong likelihood that evidence will be destroyed or where, under the circumstances, it appears that a peaceful request for admission would be futile. (Rest.2d Torts, § 206, p. 385; *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6]; *Parsley* v. *Superior Court,* 9 Cal.3d 934 [109 Cal.Rptr. 563, 513 P.2d 611].)

The existence of circumstances giving rise to the exceptions must be determined by the officer at the time of entry "[w]ithout the benefit of hindsight and ordinarily on the spur of the moment, . . ." (*People* v. *Maddox, supra,* at p. 306.)

Again, as in all questions surrounding the validity of a search, the question is ultimately the reasonableness of the officer's action in light of all the circumstances and the objective to be achieved by compliance with the rule. (*People* v. *Superior Court,* 5 Cal.App.3d 109 [84 Cal.Rptr. 778]; *People* v. *Livermore,* 30 Cal.App.3d 1073 [106 Cal.Rptr. 822].)

In the case at bar the officers were confronted with the task of attempting to gain access to the house of a heroin dealer which house was

observed to be a virtual fortress. The front porch was enclosed with iron bars and a locked iron gate. Under the circumstances, it appears to us that the officers were reasonably justified in believing that it was highly unlikely that Thompson would readily admit them without first disposing of any contraband that might be on the premises.

The officers devised a plan to peacefully entice defendant outside of the iron barricade before making known their desire to enter and search. That plan consisted of staging a mock police chase which would terminate in front of the residence.

Firecrackers were set off to simulate gunfire. Thompson was asked to step to the front of the house to examine his parked automobile for possible damage from the shots. When Thompson opened the iron gate, one of the officers grabbed the gate to hold it open and stated "Police officers, I have a search warrant."

Thompson attempted to close the gate and prevent entry. Other officers rushed through the gate toward the door of the house. Another person on the premises attempted to slam that door and prevent entry.

Still another occupant of the house ran to the bathroom and slammed the door. By the time an officer entered the bathroom that person was seated on the toilet. Heroin was later recovered from the toilet bowl.

Thus the officers attempted to substantially comply with the statutory requirements and the conduct of the occupants of the house in response thereto bore out the officers' prior evaluation.

Defendant objects to the use of a "ruse" to get him to open the gate and the precipitant manner in which the officers made entry almost simultaneously with their announcement of authority and purpose.

It is true that where officers use trickery to gain entry to a place *where they would not otherwise be permitted to enter,* any evidence recovered as a result of such fraudulently obtained consent cannot be used against a defendant. (*People* v. *Reeves,* 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393].)

Here, however, the officers had the absolute right to *enter* the premises. They were commanded to do so by a validly issued judicial process. Hence the rule of *People* v. *Reeves, supra,* is not applicable. (See *People* v.

*Rudin,* 77 Cal.App.3d 139 [143 .Cal.Rptr. 360]; *People* v. *McCoy,* 40 Cal.App.3d 854 [115 Cal.Rptr. 559]; *People* v. *Veloz,* 22 Cal.App.3d 499 [99 Cal.Rptr. 519]; *People* v. *Lopez,* 269 Cal.App.2d 461 [74 Cal.Rptr. 740]; *People* v. *Lawrence,* 149 Cal.App.2d 435 [308 P.2d 821].)

As noted, the officers were confronted with the problem of access to a veritable "fortress." It was proper for them to consider the various eventualities including what course of action would be open to them had they simply knocked and demanded entrance and the defendant refused. Entry then would have required the use of cutting torches, sledge hammers and crowbars. Obviously any chance of recovering the contraband would then have disappeared.

The "knock and notice" requirement is not designed to provide the occupant of a building with an opportunity to destroy evidence. It is designed to minimize the possible consequences of a surprise violent entry. One of those consequences has been held to be that the police might be taken for prowlers and shot by the householder. (*Ker* v. *California,* 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623].)

The ruse employed here successfully avoided the various consequences that rule is designed to prevent. The officers were in full uniform and defendant was made aware of the officers' presence before any entry was attempted. There was no concealment of the officers' identity, only their purpose. (See *Mann* v. *Superior Court,* 3 Cal.3d 1 [88 Cal.Rptr. 380, 472 P.2d 468].)

Further, defendant was given an opportunity to peacefully open the iron gate before any forced entry was attempted. In short, the ruse was simply a "precaution to prevent the destruction of evidence, which often occurs when officers announce their presence and demand entry." (*People* v. *Reeves, supra,* 61 Cal.2d at p. 279.)

When the true purpose of the officers' visit was disclosed prior to entry, Thompson's response, and the response of other occupants, was to attempt to physically block entry. Nothing more was required of the officers. Their conduct was reasonable and comported with the spirit and purpose of the law.

## The Identity of the Informant

The uncontroverted evidence shows that the informant was not present at the scene of the arrest nor was he a percipient witness to any of the events which formed the basis for the charges against defendant.

Defendant's connection with the house and the heroin on the date of the arrest was overwhelmingly established by the observations of the officers, unrelated to any information provided by the informant. The identity of the informant was totally irrelevant. (*People* v. *Goliday,* 8 Cal.3d 771 [106 Cal.Rptr. 113, 505 P.2d 537]; *People* v. *Hambarian,* 31 Cal.App.3d 643 [107 Cal.Rptr. 878]; Evid. Code, §§ 1041, 1042.)

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied March 7, 1979, and appellant's petition for a hearing by the Supreme Court was denied April 26, 1979.