[Crim. No. 20999. Second Dist., Div. One. Apr. 14, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
PATRICK MUNOZ et al., Defendants and Respondents.

## COUNSEL

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, Joseph P. Busch, District Attorney, Harry Wood and Thomas J. Barnett, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, James L. McCormick, Henry A. Bastien, Harry W. Brainard, Deputy Public Defenders, Hulland & McEvilly and Franklin A. Hulland for Defendants and Respondents.

## OPINION

**LILLIE, Acting P. J.**—Munoz and Salas were charged with possession of marijuana (§ 11530, Health & Saf. Code) and Munoz with possession of restricted dangerous drugs (§ 11910, Health & Saf. Code). The People appeal from order setting aside information.

During the afternoon of June 16, 1971, Officer Thoemmes received information that a Patrick Munoz was in possession of a large quantity of dangerous drugs estimated to be a thousand pills, and was selling them at a North Vincent Street address; he then ran a utility check of the premises and found electricity was being furnished to Munoz and the telephone was listed in his name. At 8 p.m. Officer Thoemmes and three officers went to the residence to investigate; he knocked on the front screen door

and through the screen saw Munoz walk toward the door and heard him ask, "Who is it?"; he responded by displaying his badge and stating he was Detective Thoemmes, West Covina police; at that time he saw Salas, who appeared to be naked, stick his head out from a hallway and put on his pants; Munoz said, "Just a minute please" and disappeared from sight; a minute later Munoz returned and said, "The cops? You are kidding"; he said, "No," asked if he was Patrick Munoz, and told him he was there to investigate a complaint of possible narcotics sales; Munoz opened the screen door and said, "Come on in." The officers walked with Munoz into the kitchen where there were a female, he introduced as his wife but whose name was Miss Salas, Salas (her brother) and another female. Officer Thoemmes explained to them that he "had received information that possible sales were taking place inside the location and that [he] had information that a large quantity of dangerous drugs were inside," then asked Munoz "if he minded if [they] searched the location"; Munoz asked if he had a search warrant and he replied he had not; Munoz turned to Miss Salas and said, "Well, I don't know"; she responded, "Go ahead," and Munoz turned around and said, "There is no dope in this house. Yeah, go ahead and search."

The officers, Munoz and Salas proceeded to the southwest bedroom. Munoz told them "he had to work very hard to make the payments on the house and asked that [they] not destroy anything because he had to pay a lot of money for his furniture." Prior to entering the southwest bedroom Officer Thoemmes asked Salas if this was his room and he replied, "This is my room. I sleep here"; a search thereof uncovered from under the mattress a baggy containing marijuana. They then proceeded to the southeast bedroom which Munoz and Miss Salas stated was their bedroom and found a small Kodak film can on top of the dresser containing a white powder and some pieces of amphetamine tablets, and in the top right hand dresser drawer, a piece of hashish.

In granting the 995 motion the trial judge found there was not "an unequivocal, voluntary, lawful consent, but more a submission to authority" based upon these factors—Munoz' delay of at least a minute before opening the door, inquiry as to whether the officer had a search warrant and "vacillation" before giving consent; that "four officers go into the house and immediately confront the occupants in the kitchen"; the location of the contraband; and "the officer [Thoemmes] who testified indicating that in his opinion they were there to investigate and this includes, as part of the investigation, a search." He also found to be unlawful the search of Salas' room on the authority of *Beach* v. *Superior Court,* 11 Cal.App. 3d 1032 [90 Cal.Rptr. 200].

■ "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances." (*People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852]; *People* v. *Smith,* 63 Cal.2d 779, 798 [48 Cal.Rptr. 382, 409 P.2d 222].)

■ The committing magistrate found that Munoz had consented to the search; it is implicit in that finding that it was an effective consent. (*People* v. *Carrillo,* 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377].)

■ "Neither the trial court in a section 995 proceeding [citations] nor a reviewing court on appeal therefrom [citations] may substitute its judgment as to the weight of the evidence for that of the committing magistrate. 'Although the magistrate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order.' [Citation.] ■ Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (*Rideout* v. *Superior Court, supra,* 67 Cal.2d 471 [62 Cal. Rptr. 581, 432 P.2d 197].)" (*People* v. *Hall,* 3 Cal.3d 992, 996 [92 Cal. Rptr. 304, 479 P.2d 664].) Applying the foregoing rules we conclude that the facts support the finding of the committing magistrate that Munoz voluntarily consented to a search of the premises; that there was reasonable or probable cause for the commitment and that the information should not have been set aside.

The delay of several minutes before Munoz opened the door does not necessarily show a reluctance to talk to the officers. The delay supports any number of reasonable inferences favorable to the information none of which has any connection with the matter at hand, the most reasonable of which under the facts is that when Munoz disappeared from sight he alerted the occupants and waited until Salas put on his pants before admitting anyone. Munoz' response "Just a minute please" implied a willingness to return and talk to the officers. The officer informed him he was there to investigate a complaint of possible narcotics sales. ". . . it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes" (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855]), and it matters little that in Officer Thoemmes' opinion the investigation included both asking questions as to drugs and a search.[1] However, at the time the officer knocked nothing suggests that he intended to do anything other than question Munoz or that he asserted

[1]On cross-examination defense counsel asked Officer Thoemmes "Doesn't an investigation require asking questions as to specifics as to drugs, or do you consider the investigation as being a search?" and he answered, "Both."

a right to enter or search the premises or even requested admittance. It was Munoz who initiated the invitation to the officers to step inside.

Upon entering the four officers went into the kitchen with Munoz where Salas, Miss Salas and a female were. The evidence does not reasonably support the inference that the officers "confronted" the four occupants in the kitchen as that term was used by the trial judge nor does it lend itself to a finding that the subsequent consent to search was given in submission to an implied assertion of authority. The fact there were four officers does not in itself carry an implied assertion of authority that the occupants should not be expected to resist; in *People* v. *Carrillo,* 64 Cal.2d 387 [50 Cal.Rptr. 185, 412 P.2d 377], there were six officers who suddenly entered the kitchen where there were three occupants. Also there were in the kitchen four adults, two males, not the "distraught or timid woman" in *People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]. The officers did not suddenly materialize in the kitchen nor did they surprise either Munoz or the others. Munoz knew who they were when he invited them into his home. As for the other occupants, there is an inference in Munoz' delay in admitting the officers and his momentary disappearance from sight that he alerted them to the presence of police. Moreover, Munoz, the head of the household, accompanied the officers into the kitchen. No conduct of the officers supports a finding of implied assertion of authority. There was no illegal entry or illegal police conduct (*People* v. *Haven,* 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927]), no assertion of a right to enter or search, and no demand or request to enter (*Parrish* v. *Civil Service Commission,* 66 Cal.2d 260, 269 [57 Cal.Rptr. 623, 425 P.2d 223]); the officers were not in uniform,[2] and there was nothing to show that they unholstered guns or even carried any, or engaged in any potentially coercive or threatening conduct. (*People* v. *Harrington,* 2 Cal.3d 991, 997 [88 Cal.Rptr. 161, 471 P.2d 961]; *People* v. *Brown,* 19 Cal.App.3d 1013, 1018 [97 Cal.Rptr. 341]; *People* v. *Schomer,* 17 Cal.App.3d 427, 434 [95 Cal.Rptr. 125].) Finally, having accompanied the officers into the kitchen Munoz introduced Miss Salas to them as his wife. There is no evidence of "confrontation" in the sense of challenge or resistance or of facing the occupants in defiance or opposition or of an encounter of resistance, threat or hostility, and no evidence from which a rational inference could be drawn that there was any compulsion of the type that would render the consent constitutionally inadequate.

In the kitchen Officer Thoemmes explained why he was there, then

---

[2]Officer Thoemmes testified he was not in uniform and the record is silent as to whether the three others were, but inasmuch as the three were known as the department's "S.E.D. group," the inference is reasonable that they too were in plain clothes working an investigating unit.

asked Munoz if he minded if they searched; asked by Munoz if he had a search warrant he answered he had not. This, in the light of Munoz' subsequent consent to search did not, as a matter of law, require the trial court to draw an inference that the consent was involuntary. (Cf. *People v. Cunningham,* 188 Cal.App.2d 606, 610 [10 Cal.Rptr. 604].) After the officer told him he had no search warrant Munoz turned to Miss Salas and said, "I don't know," whereupon she said, "Go ahead," and Munoz turned around and said, "There is no dope in this house. Yeah, go ahead and search." As far as the officers knew Miss Salas was Munoz' wife, and a cotenant and occupied the premises with him. The realities of the situation compel the inference that in Munoz' hesitation and gesture toward Miss Salas there was an implied query to her whether everything on the premises was in order for a police search. Miss Salas told the officers, "Go ahead," and judging from his immediate answer to Officer Thoemmes, Munoz must have understood her statement as assurance that there was no evidence of "dope" on the premises. The compelling factor in giving his consent was not the presence of the officers but Miss Salas' statement.

Broken pieces of amphetamine tablets and a piece of hashish were found on and in the dresser but the location of the contraband is here of little significance. While it can be argued generally that no sane person would voluntarily consent to a search knowing that contraband can be easily found in his bedroom, there is here every indication that either Munoz and Miss Salas believed there was no "dope" on the premises or did not consider the contraband to be what the officers were looking for. Again referring to the implication of Munoz' disappearance from sight before admitting the officers that he alerted Miss Salas and the others to the presence of police, it is fair to also infer that Munoz believed that whatever contraband had been in the house was disposed of. The officer testified that the garbage disposal had been turned on. Another inference as plausible is that neither Munoz nor Miss Salas considered the small residue of amphetamine and hashish to be the "large quantity of dangerous drugs" the police were looking for. When the officer entered the kitchen he advised them he had information that possible sales were taking place in the residence and that a large quantity of drugs was inside; thus, thinking in terms of a large amount, Munoz and Miss Salas knew the police would find no "large quantity" and no evidence of any "sales taking place." Finally, it is reasonable to infer from all of the circumstances that Munoz and Miss Salas in living on premises upon which large quantities of contraband were purportedly kept and sales made, had forgotten the small amount of contraband in their bedroom.

The foregoing factors considered singly or collectively compel no

finding as a matter of law that the facts support the trial judge's conclusion that Munoz' consent was not voluntarily given but the result of an implied assertion of authority. (*People* v. *Ramirez,* 4 Cal.App.3d 154, 157 [84 Cal.Rptr. 104].)

There is also merit to appellant's contention that the search of Salas' bedroom was lawful but not because he impliedly consented to the search. Salas was in the kitchen when Officer Thoemmes asked Munoz for his consent to search; no request was directed to him and he remained silent. The officers, accompanied by Munoz and Salas then proceeded to the southwest bedroom where without asking or receiving Salas' consent, searched his room. We do not agree with appellant's contention that Salas' silence supports a finding that he impliedly consented. It cites numerous authorities to the effect that for a valid consent specific words are not necessary and actions may be sufficient. However, here there was no request of Salas to search and no stepping aside or affirmative physical movements by him as in *People* v. *Harrington,* 2 Cal.3d 991, 995 [88 Cal.Rptr. 161, 471 P.2d 961], no inculpatory language by Salas which implied lack of objection as in *Nerell* v. *Superior Court,* 20 Cal.App.3d 593, 599 [97 Cal.Rptr. 702], no throwing of keys on a table impliedly inviting a search and giving immediate means of doing so as in *People* v. *Guyette,* 231 Cal. App.2d 460, 464 [41 Cal.Rptr. 875], and no opening of the door to his room by Salas as in *People* v. *Jolke,* 242 Cal.App.2d 132, 149 [51 Cal. Rptr. 171]. ▪ Salas was not asked for his consent and engaged in no overt conduct implying consent; his silence under these circumstances does not imply consent. (*People* v. *Superior Court,* 10 Cal.App.3d 122, 127 [89 Cal.Rptr. 316].)

Even though the officers knew before they entered the southwest bedroom that it was Salas' and he slept there, the evidence supports the implied finding of the magistrate that they had reasonable grounds to believe Munoz had authority to consent to the search. Before going to the premises Officer Thoemmes ascertained that Munoz was the householder, the person to whom the electricity and telephone service were furnished. When he knocked on the screen door it was Munoz who responded and it was he who opened the door and invited them in, and it was Munoz who introduced Miss Salas as his wife. When asked for permission to search Munoz checked with her, not with Salas, before giving his consent, then both Miss Salas and Munoz told the officers to "Go ahead"; at no time did Munoz talk to Salas either in the kitchen or before or after the officers entered Salas' room and during all of this time Salas remained silent. Before entering Salas' room Munoz told the officers he had worked very hard to make the payments on the house and asked them not to destroy anything

because he had paid a lot of money for the furniture; and when the officers started to search Salas' room neither Munoz nor Salas voiced any objection. ▮ From the foregoing Officer Thoemmes could reasonably believe that Munoz was head of the household and owned the house and all of the furniture. "Policemen are not required to be experts in the law of landlord and tenant." (*People* v. *Jackson,* 14 Cal.App.3d 57, 68 [97 Cal. Rptr. 91]; *De Conti* v. *Superior Court,* 18 Cal.App.3d 907, 910 [96 Cal. Rptr. 287].) At that time the officer had not been advised of Salas' status in the household—tenant, or guest, or his relation to Munoz. Conceivably further factual exploration of these matters at a hearing on a 1538.5 motion may justify the granting of such motion and a later dismissal of the action but we only deal with the order here made. (*People* v. *Ramirez,* 4 Cal.App.3d 154, 157 [84 Cal.Rptr. 104].) We rely on the statement of the settled rule found in *People* v. *Smith,* 63 Cal.2d 779, at page 799 [48 Cal.Rptr. 382, 409 P.2d 222], that "a search is not unreasonable if made with the consent of a cooccupant of the premises who, by virtue of his relationship or other factors, the officers reasonably and in good faith believe has authority to consent to their entry. [Citations.]" (See also *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469]; *Beach* v. *Superior Court,* 11 Cal.App.3d 1032, 1035 [90 Cal.Rptr. 200].) The facts in *Beach* are distinguishable from those at bar. Mrs. Nichols invited the officers into the apartment, said she lived there with her brothers (defendants) and Gail Gaskins and said they could look anywhere they wanted. In defendants' bedroom they found contraband which the court said was the product of an illegal search because the police could not have reasonably believed Mrs. Nichols had authority to permit a search of the room and personal property of third persons; and nothing she said led the police to believe she had authority to allow a search of her brothers' room and personal effects (p. 1035). The officers had no basis for believing that Mrs. Nichols was the lessee of the apartment or for knowing the status of the other occupants; there is no evidence she had any control over the room or the furniture therein.

The order is reversed.

Thompson, J., and Clark, J., concurred.

The petition of respondent Salas for a hearing by the Supreme Court was denied June 7, 1972. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.