[Crim No. 21803. Second Dist., Div. Three. Nov. 22, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
HARRY RANDALL MONSON, Defendant and Appellant.

936

## COUNSEL

John H. Marshall and Henry F. Poyet for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Bradley A. Stoutt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COBEY, J.**—Harry Randall ("Doc") Monson appeals from a judgment of conviction of receiving stolen property (Pen. Code, § 496) entered upon his plea of nolo contendere, following the denial of his motion to suppress evidence made pursuant to Penal Code section 1538.5. The certificate of probable cause, required by Penal Code section 1237.5, has been filed. The appeal lies (Pen. Code, §§ 1237, subd. 1, 1538.5, subd. (m)), but is without merit.

Appellant advances the following grounds for reversal. First, he contends that there was no probable cause for his warrantless arrest, since it was based upon "search and seizure and investigation" which themselves lacked probable cause. Second, he argues that the Los Angeles City police were without jurisdiction to arrest him in Burbank. Third, he claims that the trial judge prejudged his motion pursuant to Penal Code section 1538.5 before all the evidence was adduced and the matter was submitted.

### FACTS

Viewing the record in the light most favorable to the People, as we are bound to do (see *People* v. *Reilly*, 3 Cal.3d 421, 424-425 [90 Cal.Rptr. 417, 475 P.2d 649]), we proceed to set forth the pertinent facts, which are undisputed.

On February 26, 1970 two Los Angeles City police officers were proceeding to their station when they saw appellant driving beside them. They recognized him as "Doc" Monson, a known burglar and receiver of stolen property. During the preceding five years they had received intelligence information concerning appellant's criminal activity from fellow police officers. It was usual police procedure for the officers, who were assigned to the burglary and receivers of stolen property detail, to investigate persons with criminal backgrounds to see what they were doing. They followed

appellant and ran a registration check on the automobile he was driving. It was registered to him. They observed him stop in front of a retail fur store, enter the store and exit three minutes later with the store owner. Appellant was carrying a fur jacket which he placed in the trunk of the car. He removed a fur-collared gray coat and a shopping bag therefrom, and reentered the store with the owner. Thereafter, appellant got back in the car and drove away.

One of the officers then entered the fur store and asked the owner about appellant. The owner stated that he knew him as "Doc Monson" and that since December of 1969 appellant had been bringing him furs for relinings and alterations. The owner showed the officer the two furs that appellant had just brought in, the fur-collared gray coat whose label was removed and a fur jacket whose label was also removed but which contained the monogram "Rose Mahru." The officer telephoned his office and learned that a fur of the same description with a monogram of the same name had been taken in a burglary that had occurred a few days earlier and that it, along with other items, had been reported stolen the previous day. After relaying this information to two other officers who apparently had joined them, the two officers went to an address in Burbank where they observed the vehicle that appellant had driven parked in the carport of apartment No. 4. After determining that appellant's name was on the mailbox of the apartment, they went to obtain a search warrant for the other items taken with the fur. Two other officers remained at the location and continued to watch appellant's apartment and car.

Appellant was arrested that same evening by one of the officers keeping surveillance outside his apartment before the return of the officers who had gone to obtain a search warrant. Appellant was arrested without a warrant for burglary after he shook five rifles wrapped in a blanket into the trunk of a visitor's car.

## DISCUSSION

Appellant's first contention is that there was no probable cause for his warrantless arrest, because it was based upon "search and seizure and investigation" which themselves lacked probable cause. Because the "search and seizure and investigation" lacked probable cause, appellant contends that it was error to admit evidence of one of the items seized—the fur jacket with the monogram "Rose Mahru." Specifically he claims, without any citation of authority in support of his position, that the same probable cause required for a valid arrest is also required to begin an investigation and to place a suspect under surveillance, and that such was absent here.

Apparently this is a novel argument as we have not found any authority for the proposition advanced.

■ We do not think that the case before us even raises a Fourth Amendment issue. The Fourth Amendment protects persons from unreasonable searches and seizures. (U.S. Const., 4th Amend.) It applies to all governmental invasions into "'the sanctity of a man's home and the privacies of life.'" (*Berger* v. *New York,* 388 U.S. 41, 49 [18 L.Ed.2d 1040, 1047, 87 S.Ct. 1873], quoting *Boyd* v. *United States,* 116 U.S. 616, 626-627 [29 L.Ed. 746, 749-750, 6 S.Ct. 524].) The instant case contains no evidence that any intrusion into appellant's privacy occurred at the time appellant was followed to the fur store by the investigating officers; in fact, neither a search nor seizure of any sort occurred at this time nor during the subsequent questioning of the fur store owner.[1] There is no intimation that the fur store owner did not voluntarily speak with the officers or voluntarily show them the two items which appellant had just brought to the owner. "'. . . [I]t is not unreasonable for officers to seek interviews with suspects or witnesses . . . .'" (*People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855]; *People* v. *Munoz,* 24 Cal.App.3d 900, 904 [101 Cal.Rptr. 265].) Otherwise they cannot perform effectively their functions of preventing crime and apprehending those reasonably suspected of crime.

This being so we cannot say that the investigating officers violated a constitutionally required standard of probable cause to investigate. On the contrary, the officers behaved in a manner consistent with Fourth Amendment standards by not arresting or detaining appellant at this time when they had no probable cause for either detaining (see *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]) or arresting him. (See *Cunha* v. *Superior Court,* 2 Cal.3d 352, 356 [85 Cal.Rptr. 160, 466 P.2d 704].)

Having determined that a fur jacket of the same description and with the same monogram as the one appellant had brought to the fur store had been reported stolen the day before, the officers' subsequent conduct—surveillance of appellant's apartment and arrest of appellant—was lawful.

■ Appellant's second contention is that his arrest was illegal since it was made by Los Angeles police in the City of Burbank and was, therefore, ultra vires. This claim is without merit. Where, as in this case, the

---

[1] A search implies some "'exploratory investigation or an invasion and quest, a looking for or seeking out . . . a prying into hidden places for that which is concealed . . . or intentionally put out of the way.'" (*Bielicki* v. *Superior Court,* 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288].) Obviously there was no search of the fur store by the officers inasmuch as the store owner voluntarily cooperated with them in their investigation of appellant.

authority of officers to arrest does not fall within the provisions of Penal Code section 830.1, their power to arrest when acting beyond the limits of the geographic area of their authority is the same as that conferred upon a private citizen. (*People* v. *Aldapa,* 17 Cal.App.3d 184, 188 [94 Cal.Rptr. 579].) Under Penal Code section 837 a private citizen may arrest another when, among other things, a felony has been in fact committed and he has reasonable cause to believe that the person arrested committed it.

In the instant case, the record indicates that a felony had been committed and that reasonable cause existed for believing that appellant committed it. A burglary of Rose Mahru's dwelling had occurred a day or so before. Appellant was seen delivering a fur jacket, with Rose Mahru's monogram, matching the description of the one reported stolen in the burglary a few days after it occurred.

■ Finally, appellant contends that the court prejudged appellant's motion made pursuant to Penal Code section 1538.5 before all of the evidence was taken. He bases this claim upon the trial court's remarks following denial of defense counsel's motion to exclude an officer's testimony based upon ". . . any information that he has received." Part of the challenged testimony was based upon information received from a confidential informant whose identity was not disclosed.

The court said: "There is a lot of additional information. He testified he has received information for a period of some five years regarding Doc Monson. The mere fact that he received some information from an alleged informant, I don't think is material to this particular point.

"I think there is sufficient—far and away—sufficient probable cause, possibly, will be shown what he went out there for. He is not relying entirely on an informant."

The obvious meaning of these remarks was that even without the informant's information it was possible that the prosecution would be able to show probable cause to arrest defendant. As nothing said by the trial court demonstrated bias against appellant nor a prejudgment of his 1538.5 motion, there was no error.

The judgment is affirmed.

Schweitzer, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied December 8, 1972.