[Crim. No. 22495. Second Dist., Div. Five. Aug. 28, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
DEBORAH SLOSS, Defendant and Appellant.

**COUNSEL**

Kenneth W. Gale for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Howard J. Schwab and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—This is an appeal from an order granting probation following appellant's conviction by jury trial of one count of possession for sale of marijuana in violation of Health and Safety Code section 11530.5 and one count of unlawfully offering to sell, furnish or give away marijuana in violation of Health and Safety Code section 11531.

On September 21, 1971, Officer Hill of the Long Beach Police Department obtained a search warrant authorizing a search of an apartment at 1243 East Ocean in Long Beach for the purpose of seizing four pounds of marijuana alleged to be contained in a metal box in brown wrapping paper with a mailing label bearing appellant's name, as well as certain

correspondence and paraphernalia used to package or consume marijuana. In his affidavit in support of the issuance of the search warrant Officer Hill stated that on September 17, 1971, he had been contacted by Agent Kille-wald, a United States Customs agent, who stated that he had in his custody a parcel containing approximately four pounds of marijuana destined for delivery to 1243 "Upper" East Ocean in Long Beach. On September 20, 1971, Agent Cunningham showed the parcel to Officer Hill at the United States Customs House. The parcel was wrapped in brown wrapping paper and addressed to Mr. and Mrs. C. D. Swarts, care of Miss D. Sloss, 1243 "Upper" E. Ocean, 90803, and the return address was Dave G. Olsen, 106 E. 3d Street, Kragga Kamma, South Africa. In the presence of Officer Hill, Agent Cunningham opened the parcel, removed one of four packages and from that package removed a small amount of plant material. The sample was turned over to a Long Beach Police Department criminalist who reported that it was marijuana.

On September 17, 1971, Officer Hill had checked the utilities for 1243 East Ocean and learned that Lawrence M. Jasmann lived in the upper unit and that the lower unit was vacant. Officer Hill and another officer went to 1243 East Ocean and observed on the front door of the building two pieces of tape, one bearing the name Jasmann and the other bearing the name Sloss. On the floor of the vestibule of the door there were two pieces of mail, one addressed to Debbie Sloss, 1243 East Ocean "Upper" and the other addressed to Lawrence Jasmann, 1243 East Ocean. The affidavit stated that the parcel would be placed in normal mail channels and delivered between 4 and 6 p.m. on September 21, 1971, and concluded with the officer's opinion that the contents of the parcel would be concealed in the house, or on the persons of Jasmann or Sloss shortly after delivery of the package. The search warrant issued at 3:50 p.m.

The package was delivered by a mailman at about 6 p.m. From a vantage point where he could observe both the front door and the inside of the residence, Officer Smith observed Jasmann accept the package and take it into the south bedroom. Shortly after 6 p.m. Officer Hill, together with Customs Agent Killewald and other Long Beach police officers, went to the rear of the residence, where they met Jasmann on the rear steps. Officer Hill identified himself, informed Jasmann that he was there to execute a search warrant, and showed Jasmann a copy of the warrant. The officers entered the house, and Hill went to the south bedroom where he removed the package from a bed. Officer Hill then advised Jasmann of his constitutional rights. Jasmann stated that he understood his rights. Officer Hill asked Jasmann if he were willing to talk about involvement with narcotics and Miss Sloss in the residence and Jasmann stated that he was.

Jasmann stated that he and appellant had been living at the apartment since April of 1971, that they shared the rent, kept separate bedrooms, and used the rest of the apartment in common. He stated that he was aware of the use of marijuana in the residence by appellant and her friends, that he disapproved of it and was not involved in it. Officer Hill asked when appellant was expected to return and Jasmann said in the neighborhood of 9 p.m. Hill asked Jasmann for permission to use Jasmann's bedroom and to leave the parcel on the dining room table. Jasmann gave his permission. Jasmann was not placed under arrest.

Officer Hill left the package on the table. From the dining room table Officer Hill took a blue airmail envelope postmarked Port Elizabeth, South Africa, addressed to appellant. Also seized during the search of the residence were two photographs of appellant, an application for visa to the Republic of South Africa, cigarette papers and several plant fragments.

Officer Hill left the residence at approximately 7:30. Officers Smith and Scholtz remained in Jasmann's bedroom for the purpose of observing appellant's reaction to the package when she came home. Jasmann's bedroom was about six feet from the dining room table, and the door was left open five or six inches.

At about 8:30, Officer Smith heard two female voices and observed appellant and Miss Montaine. Appellant or Miss Montaine said, "Hi, Larry, what's happening." Jasmann said, "Your package came." Appellant came into the dining area, looked at the package and said, "F——, the package from Africa is here." Miss Montaine said, "F——, can we smoke some now?" Appellant replied, "Yes." Miss Montaine said, "Will you sell me two lids, and I'll pay you the full price?" Appellant said, "Sure."

Subsequently appellant went to the telephone, dialed a number and asked for a party. She left a message stating that she had received a letter from Africa and wanted to read the letter to the other party. Miss Montaine then stated, "I'm going to call Fred." She dialed the number and then said, "Fred, Debbie got her package from Africa. We're going to open it. Come on over."

Miss Montaine hung up the phone and said to appellant, "Let's open the package. Can we open the package?" Appellant said, "Sure." As they were opening the package appellant said, "This is the best stuff money can buy. It's almost pure . . . grass. . . . There's no stems or seeds." Miss Montaine asked, "Can I buy a brick?" Appellant replied, "They go for $200 a brick." Miss Montaine said, "Will you sell me half a brick for a hundred?" Appellant replied, "Sure." Officers Smith and Scholtz then came out of the bedroom and arrested appellant and Miss Montaine.

The marijuana in the package weighed 1,996 grams and was in highly potent form. Approximately 6,000 cigarettes could be made from the marijuana in the package. Based upon the quantity and character of the marijuana and the conversation overheard in the apartment, it was the opinion of Officers Smith and Hill that the marijuana was possessed for purposes of sale.

With a five power magnifying glass Officer Hill observed the two photographs found in the apartment pursuant to the search warrant. One of the photographs showed appellant holding a cigarette. As an expert on marijuana Officer Hill formed the opinion that the cigarette she was holding in the photograph was a marijuana cigarette. This opinion was based on his observation that the cigarette was hand-rolled, was small in size, and was held in the manner typical of marijuana cigarettes. The size and manner of holding the cigarette is designed to prevent the escape of any of the smoke. Appellant admitted at trial that it was a marijuana cigarette.

Appellant raises numerous contentions. They may be grouped as follows: 1. Defects in the search warrant. 2. Error in admitting testimony of the conversations overheard by the officers from Jasmann's bedroom. 3. Error in the admission of certain documentary and opinion evidence. 4. Insufficiency of the evidence to show an offer to sell marijuana as found in count II. We find none of these contentions persuasive and therefore affirm the judgment.

# I

## THE SEARCH WARRANT

■ Appellant contends that the search warrant was based on tainted evidence because the package was not lawfully opened by United States Customs Agent Killewald or by Agent Cunningham, who showed the contents to Officer Hill. This is without merit. All mail of foreign origin believed to contain merchandise is subject to customs inspection. (19 U.S.C. § 1499; 19 C.F.R. §§ 9.0, 9.2, 9.5; 39 C.F.R. § 61.1 (36 Fed. Reg. 11850-11851, June 22, 1971).) Such customs searches do not require a warrant or probable cause to believe the merchandise is contraband. (*United States* v. *Beckley* (6th Cir. 1964) 335 F.2d 86, 88-89, cert. den. 380 U.S. 922 [13 L.Ed.2d 807, 85 S.Ct. 921]; *United States* v. *Swede* (S.D.N.Y. 1971) 326 F.Supp. 533, 536.)

Appellant raises several technical objections to the search warrant and the affidavit in support thereof. ■ The affidavit is on a form describing the premises to be searched and the evidence to be sought. It contains a form statement, under oath, signed by the affiant, concluding that the

property is at the described location and is being used to commit a felony. On the form is a line stating: "Source of Information (see Attachment ————)." The numeral "1" is typed into the blank. "Attachment No. 1" is a two-page statement of the facts relied upon by the affiant. Appellant argues that Attachment No. 1 is not signed or sworn and is not incorporated into the affidavit and therefore could not be considered in support of the affidavit. Such an extremely technical and formalistic argument is inappropriate, as we are told by the Supreme Court in *United States* v. *Ventresca,* 380 U.S. 102, 108 [13 L.Ed.2d 684, 689, 85 S.Ct. 741], where it is said, ". . . affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . . Technical requirements of elaborate specificity . . . have no proper place in this area." The attachment was obviously incorporated into the affidavit.

■ The affidavit states that "The parcel will be replaced in normal mail channels and delivery will be made at approximately between 4:00 P.M. and 6:00 P.M. on September 21, 1971. Your affiant will not execute this warrant until after delivery of the package." Appellant argues that the warrant could not issue prior to the delivery of the package to the apartment. We disagree. The affidavit gave probable cause to believe that the contraband would be at the premises at the appointed time, and the warrant could issue prospectively. (*Alvidres* v. *Superior Court,* 12 Cal.App.3d 575, 581-582 [90 Cal.Rptr. 682]; *People* v. *Superior Court (Marcil)* 27 Cal.App. 3d 404, 410-411 [103 Cal.Rptr. 874]; *People* v. *Sanchez,* 24 Cal.App.3d 664, 679 [101 Cal.Rptr. 193].) ■ Appellant also complains that contrary to the affidavit the package was not placed in "normal" mail channels but was instead delivered by a specially selected mail carrier who required a return receipt upon delivery. This is trivial, and has no bearing whatsoever on the validity of the warrant. The magistrate was fully informed of the relevant fact, that the package would be delivered between 4 and 6.

■ The search warrant authorized a search for certain evidence in addition to the parcel containing the marijuana, including "Any correspondence addressed to Debbie Sloss, Lawrence Jasmann, Mr. and/or Mrs. C. D. Swarts from Dave G. Olsen, or from any persons whose return address is Kragga Kamma, South Africa," and "Any paraphernalia used to consume or inject marijuana and any materials used to package marijuana." Appellant argues that there was no probable cause to believe such items were on the premises and that therefore the warrant invalidly purported to authorize an "exploratory" search for "mere evidence." All of these contentions are answered in *People* v. *Superior Court (Marcil) supra,* 27 Cal.App.3d 404. The marijuana paraphernalia and the correspondence were particularly described, placing a meaningful restriction on the things

to be seized, and the warrant was not unduly general. (*Id.* at pp. 414-415.) The mailing of the package of marijuana from Dave G. Olsen of Kragga Kamma, South Africa, justified a reasonable inference that other correspondence relating to the package, as well as paraphernalia for use and packaging of marijuana, would be on the premises. (*Id.,* pp. 411-415.) ▮ Finally, it has long been the rule that the seizure of evidence is not limited to contraband but includes "mere" evidence, such as the correspondence. (*Id.* at p. 416; *Warden* v. *Hayden,* 387 U.S. 294, 310 [18 L.Ed. 2d 782, 793-794, 87 S.Ct. 1642].)

Citing *United States* v. *Van Leeuwen,* 397 U.S. 249 [25 L.Ed.2d 282, 90 S.Ct. 1029], appellant argues that because postal authorities may not normally open first class letters, Officer Hill was also powerless to seize a blue airmail envelope containing a letter (Exhibit 1-A) found on the dining room table. Appellant misconceives the issue, for *Van Leeuwen* holds simply that first class mail is free from postal inspection "except in the manner provided by the Fourth Amendment," *e.g.,* pursuant to a warrant. (397 U.S. at p. 251 [25 L.Ed.2d at p. 284].) In this case the warrant authorized seizure of correspondence addressed to appellant "from any persons whose return address is Kragga Kamma, South Africa." Here the letter had no return address but was postmarked Port Elizabeth, South Africa, and the officer acted properly in seizing the letter pursuant to the warrant.

## II

### THE OVERHEARD CONVERSATIONS

With Jasmann's consent Officers Smith and Scholtz were hidden in Jasmann's bedroom and from that vantage point overheard appellant's conversations. Appellant argues that the court erred in admitting certain statements of Jasmann relating to his consent, that Jasmann's consent was not voluntarily given, and that appellant's expectation of privacy was illegally violated by the officers' eavesdropping.

▮ Appellant's argument that the testimony concerning Jasmann's conversations with the officers was inadmissible hearsay is clearly without merit. The testimony was not admitted to prove the truth of the matters asserted in Jasmann's statements, and thus was not hearsay. (Evid. Code, § 1200; *People* v. *Gonzales,* 68 Cal.2d 467, 471 [67 Cal.Rptr. 551, 439 P.2d 655].) Jasmann's statement of consent was admitted to show simply that he made it, because the officers had the right to rely on it. His statement that he was aware of marijuana use by appellant and disapproved of it was admitted to show his reasons for giving consent, not to prove that appellant did use marijuana. This is obvious from the fact that these state-

ments were admitted only during the Penal Code section 1538.5 hearing, not the trial. The only statement of Jasmann's admitted at trial was his overheard conversation with appellant or Montaine in which he said, "Your package came." This was not admitted to prove that the package was appellant's (which was amply shown by her own statements and by the fact that it was addressed to her), but was relevant simply to show appellant's reaction to the statement. (*People v. McShann,* 177 Cal.App.2d 195, 199 [2 Cal.Rptr. 71].)

The trial court found that Jasmann gave consent for the officers to remain in his bedroom to observe appellant's reaction to the package. Whether the consent was voluntary or merely a submission to asserted authority is a question of fact to be determined by the trial court, and its finding will not be upset on appeal if there is substantial evidence to support it. (See *People v. Smith,* 63 Cal.2d 779, 798 [48 Cal.Rptr. 382, 409 P.2d 222], cert. den. 388 U.S. 913 [18 L.Ed.2d 1353, 87 S.Ct. 2119]; *People v. Gravatt,* 22 Cal.App.3d 133, 137 [99 Cal.Rptr. 287].)

Here Jasmann was twice advised of his constitutional rights before he gave consent, and this is a factor tending to show that consent was voluntary. (Cf. *People v. Wheeler,* 23 Cal.App.3d 290, 305 [100 Cal.Rptr. 198].) Furthermore, Jasmann was not under arrest. Nor was Jasmann subjected to an illegal detention, unlike the case in *People v. Gonsoulin,* 19 Cal.App.3d 270, 275-276 [96 Cal.Rptr. 548], cited by appellant. The fact that a number of officers were present does not render the consent involuntary if they engaged in no threatening or coercive conduct. (*People v. Munoz,* 24 Cal.App.3d 900, 905 [101 Cal.Rptr. 265].) Here there was no evidence of any threatening or improper conduct on the part of the officers, nor was there any evidence of a reluctance to cooperate on the part of Jasmann. Jasmann stated as his reason for cooperating that he disapproved of appellant's use of marijuana. The evidence fully justified the trial court's finding that Jasmann voluntarily consented.

Citing *Katz v. United States,* 389 U.S. 347, 351 [19 L.Ed.2d 576, 581-582, 88 S.Ct. 507], appellant argues that in listening to her conversation from their vantage point in Jasmann's bedroom the officers violated her reasonable expectation of privacy, and that therefore appellant's statements were inadmissible. We find that appellant had no reasonable expectation of privacy because she made the statements in the presence of Jasmann and had no constitutionally protected interest in preventing Jasmann from allowing the police to hear the statements. In *United States v. White,* 401 U.S. 745 [28 L.Ed.2d 453, 91 S.Ct. 1122], the Supreme

Court held that when a defendant voluntarily confides in an apparent colleague the Fourth Amendment is not violated by the fact that the colleague is a government agent who is transmitting the conversation to the police by means of electronic equipment. Said the court: "Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police." (401 U.S. at p. 752 [28 L.Ed.2d at p. 459].) In applying this principle the California Supreme Court recently stated, in *People* v. *Murphy,* 8 Cal.3d 349, 359 [105 Cal.Rptr. 138, 503 P.2d 594]: "In *Hoffa* v. *United States* (1966) 385 U.S. 293 . . . *Lopez* v. *United States* (1963) 373 U.S. 427 . . . and *On Lee* v. *United States* (1952) 343 U.S. 747 . . . the Supreme Court upheld convictions based on evidence obtained by or with the consent of persons in whom the defendants had confided. Recently the plurality opinion of *United States* v. *White* (1971) 401 U.S. 745 . . . reaffirmed the vitality of those cases, stating, '*Katz* . . . [did not] indicate in any way that a defendant has a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police.' (*Id.* at p. 749 . . . .) It therefore concluded that a search warrant for the purpose of secret surveillance is not required in such circumstances." (Fns. omitted.) Had Jasmann secretly recorded or transmitted the conversation to police officers, appellant would have no claim that the statements were inadmissible. We perceive no distinction in Jasmann's allowing the officers to overhear the conversation from his bedroom. Appellant could not have prevented Jasmann himself from testifying as to the conversations, and the result is no different when the testimony is instead given by officers who overheard the conversation with Jasmann's consent. (*People* v. *Murphy, supra,* at p. 361.)

 Appellant complains that the trial court erred in admitting into evidence the telephone conversation of Sammi Montaine with "Fred." Officers Smith and Scholtz testified that Montaine telephoned a number and said, "Fred, Debbie got her package from Africa. We're going to open it. Come on over." The court admitted the statement as "part of the general overall situation, as I have said before; res gestae, if that is the correct term. But it is part and parcel of the same incident." We need not resolve the question of admissibility of the statement because it is clear that appellant could not have been prejudiced by the introduction of so ambiguous a conversation. It was uncontested that appellant received the package from Africa and that she and Montaine opened it. Appellant admitted that she expected the package, although denying that she knew what was going to be in it. Montaine's statement to Fred added nothing to the prosecution case which was not amply shown by more direct evidence.

## III
### ADMISSION OF EVIDENCE

Appellant contends that the court erred in allowing Officer Hill to testify that after examining the photograph of appellant holding a cigarette he formed the opinion that it was a marijuana cigarette. She argues that this evidence was irrelevant, prejudicial and contrary to the best evidence rule.

The evidence was relevant because it tended to prove appellant's familiarity with marijuana. Knowledge of the character of marijuana was an element of the offense, and could be proved by circumstantial evidence. (*People* v. *De La Torre,* 268 Cal.App.2d 122, 125 [73 Cal.Rptr. 704]; *People* v. *Von Latta,* 258 Cal.App.2d 329, 334 [65 Cal.Rptr. 651].) **(12)** No objection was made at trial that the probative value of the evidence was outweighed by its prejudicial effect, and therefore the trial court was not called upon to exercise its discretion in this regard.

Nor was the best evidence rule violated by the officer's testimony. Evidence Code section 1500 provides: "Except as otherwise provided by statute, no evidence other than the writing itself is admissible to prove the content of a writing." As stated in the Law Revision Commission Comment to section 1500, "The rule is that, unless certain exceptional conditions exist, the content of a writing must be proved by the original writing and not by testimony as to its content or a copy of the writing. The rule is designed to minimize the possibilities of misinterpretation of writings by requiring the production of the original writings themselves, if available." Here the original "writing" (Evid. Code, § 250) was produced in evidence, and thus the best evidence rule was satisfied. (See *People* v. *Marcus,* 31 Cal.App.3d 367, 369-370 [107 Cal.Rptr. 264]; *People* v. *Kageler,* 32 Cal.App.3d 738, 743 [108 Cal.Rptr. 235].) The objection below, that the photograph "speaks for itself," really amounted to an objection that it was not a proper subject for expert opinion.

The decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of the inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. (*People* v. *Cole,* 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435]; *People* v. *Arguello,* 244 Cal.App.2d 413, 420 [53 Cal.Rptr. 245].) The officer testified that marijuana cigarettes are often of a certain size and held in a certain manner indicated in the photograph in order to prevent the loss of any of the smoke. The appearance of marijuana cigarettes and the manner of smoking them is sufficiently

beyond the experience of most jurors that expert opinion would assist them. The fact that the officer had no opportunity to examine the cigarette itself, that he did not know where the picture was taken, and that a tobacco cigarette could have been hand-rolled in the same cigarette paper affected only the weight of the testimony, not its admissibility. Appellant subsequently admitted that it was a marijuana cigarette. The trial court did not abuse its discretion in admitting the photograph or the testimony concerning it.

■ Appellant contends that the court erred in admitting into evidence, over hearsay and relevancy objections, a letter, Exhibit 1-A, which was found on the dining room table. The letter was from appellant's sister and nephew in South Africa, and in it the nephew stated, "Well that's really a bummer not receiving that package. Hopefully you'll get it by ship." The admission of the statement could not have been prejudicial to appellant. It did not refer to the contents of the package, and at most it tended to show that appellant was expecting a package from Africa, which was amply shown by her overheard statements and her own testimony at trial.

## IV

### SUFFICIENCY OF THE EVIDENCE

■ Appellant contends that the evidence is insufficient to support conviction of offering to sell, furnish or give away marijuana, as found in count II. Appellant's argument is that "[i]n the present case defendant made no offer whatsoever, defendant merely answered Miss Montaine's inquiry with 'sure' . . . ." This argument overlooks appellant's own statement, "They go for $200 a brick," which, in the context of the conversation, clearly held the marijuana out for sale at $200 a brick. "Offer" includes to hold out, to bring before, to present for acceptance. (*People* v. *Ah Fook,* 62 Cal. 493, 494; *People* v. *Blake,* 179 Cal.App.2d 246, 253 [3 Cal.Rptr. 749], disapproved on other grounds, *People* v. *Jackson,* 59 Cal.2d 468, 470 [30 Cal.Rptr. 329, 381 P.2d 1].) Appellant's answer "Sure" to the question "Will you sell me half a brick for a hundred?" was the equivalent of "I offer to sell you half a brick for a hundred dollars."

The judgment (order granting probation) is affirmed.

Kaus, P. J., and Stephens, J., concurred.