487 A.2d 962

COMMONWEALTH of Pennsylvania, Appellant,

v.

Leroy PHILLIPS.

Superior Court of Pennsylvania.

Submitted April 30, 1984.

Filed Jan. 23, 1985.

Petition for Allowance of Appeal Denied July 30, 1985.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellant.

John V. Ryan, Merion Station, for appellee.

Before SPAETH, President Judge, and WIEAND and CIRILLO, JJ.

WIEAND, Judge:

Can a township policeman in Montgomery County, having probable cause to believe that a robbery has been committed and that the robbers are seated in a vehicle parked on the Philadelphia side of Cheltenham Avenue, cross the

street into Philadelphia and make a legal arrest? The pre-trial hearing court in Montgomery held that the arrest was illegal and suppressed incriminating evidence found in the vehicle and also an incriminatory statement made by appellee. We reverse.

At or about 1:45 p.m. on September 22, 1982, James Linkletter was assaulted and robbed by three black males in Cheltenham Township, Montgomery County. An eyewitness saw the robbers flee in a black over yellow Camaro which had extensive damage to the driver's side. One of the men was wearing black trousers and a brown jacket. This information was communicated to Officer Daniel Rickard, a township policeman, who had arrived at the scene of the robbery pursuant to police radio. Rickard thereafter returned to patrol, where, shortly before three o'clock, he observed a black over yellow Camaro parked on Cheltenham Avenue in such a way as to straddle the sidewalk. The driver's side had substantial body damage, and standing beside the vehicle was a black male wearing black trousers and a brown jacket. Two additional black males were seated in the car. At the point where the car was parked, the center line of Cheltenham Avenue forms the boundary between Cheltenham Township, Montgomery County, and the City of Philadelphia. The Camaro was parked on the Philadelphia side of the street.

Rickard pulled his vehicle behind the Camaro and approached the vehicle on foot. One of the occupants emerged and walked away with the male who was dressed in the black trousers and brown jacket. LeRoy Phillips, the appellee, remained in the back seat of the car. Rickard told the two who were leaving that he wanted to talk to them; whereupon, they started to run. Rickard gave chase but the two men took different routes, and Rickard was not able to overtake either one. He then observed that Phillips, who had been in the back seat of the car, was also running away. Rickard was able to overtake him on Limekiln Pike and place him under arrest. This was in Philadelphia. When Rickard and Phillips returned to the Camaro, the

robbery victim's wallet and umbrella were found on the back seat of the vehicle. Phillips then gave an incriminating statement to the police.

■ The Commonwealth's right of appeal is clear. Its prosecution will be so severely hampered by an inability to use the evidence suppressed by the trial court that it will not be able to proceed. Counsel for appellee concedes that prosecution cannot proceed without the incriminating evidence suppressed by the court. Therefore, we may proceed to a review of the trial court's suppression order. See: *Commonwealth v. Miller*, 334 Pa.Super. 374, 483 A.2d 498 (1984); *Commonwealth v. York*, 319 Pa.Super. 13, 15–16, 465 A.2d 1028, 1029–1030 (1983).

■ The authority of a municipal police officer to act beyond the territorial limits of his primary jurisdiction is determined by the provisions of 42 Pa.C.S. § 8953, which became effective August 14, 1982. The trial court properly concluded that subsection (a)(2),[1] which authorizes fresh pursuit, was not applicable to permit Phillips' arrest by Rickard in Philadelphia. Following the robbery, Rickard had returned to and had resumed routine patrol in the area assigned to him. It was almost an hour later when, by happenstance, he came upon a vehicle matching the description of the vehicle used by the robbers. These facts distinguish the arrest in the instant case from the arrests found legal in *United States v. Getz*, 381 F.Supp. 43 (E.D.Pa. 1974), *aff'd*, 510 F.2d 971 (3d Cir.1975), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105; *Commonwealth v. Stasiak*, 305 Pa.Super. 257, 451 A.2d 520 (1982); and *Com-*

---

1. This subsection provides that a municipal officer shall have power and authority to act as if in the territorial limits of his primary jurisdiction ...

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

42 Pa.C.S. § 8953(a)(2).

*monwealth v. Brown,* 298 Pa.Super. 11, 444 A.2d 149 (1982).

The Philadelphia arrest in this case, however, was authorized by 42 Pa.C.S. § 8953(a)(6). This subsection authorizes extraterritorial arrest by a municipal police officer

(6) Where the officer ... has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

█ Cheltenham Avenue, according to the evidence, was generally patrolled on both sides by Cheltenham Township Police. It was neither illegal nor improper for Rickard, who was in full uniform, to approach a vehicle parked on the Philadelphia side of the street to speak to occupants of the vehicle. See: *Commonwealth v. Hall,* 475 Pa. 482, 488, 380 A.2d 1238, 1241 (1977) (nothing in the Constitution prevents the police from addressing questions to anyone on the streets). Accord: *Commonwealth v. Jones,* 474 Pa. 364, 370, 378 A.2d 835, 838 (1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978). Rickard knew that a robbery had occurred in his township because he had interviewed the victim. The vehicle parked on Cheltenham Avenue matched in every way the description of the vehicle in which the three robbers had escaped. He also knew that the man standing beside the car, while two were inside the car, was wearing clothing which matched that worn by one of the robbers. These facts, particularly when combined with the flight of two of the three men when Rickard approached in uniform and told them to stop and appellee's subsequent running from the car, provided Rickard with the probable cause necessary to seize appellee and place him under arrest. See: *Commonwealth v. Gease,* 304 Pa.Super. 433, 436, 450 A.2d 989, 990 (1982); *Commonwealth v. Legg,* 258 Pa.Super. 294, 298–299, 392 A.2d 801, 803 (1978); *Commonwealth v. Dessus,* 214 Pa.Super. 347, 360, 257 A.2d 867, 873 (1969).

■ The legislature, recognizing the absurdity of territorial limitations which require an officer such as Rickard to stand by helplessly as suspected robbers flee, enacted 42 Pa.C.S. § 8953(a)(6) to grant police the power and authority to perform the functions of their office by making arrests for felonies in neighboring municipalities. Rickard acted consistently with this authorization. The arrest which he made, therefore, was not illegal merely because it was extraterritorial.[2] It follows that the court's order suppressing evidence discovered subsequent to the arrest was erroneous.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

2. Because we have concluded that Rickard could lawfully effect an arrest in Philadelphia, it is unnecessary to determine whether a municipal police officer can properly make a citizen's arrest outside the confines of the municipality in which he has primary jurisdiction. The Pennsylvania Supreme Court has never had the opportunity to decide this issue; and a decision by this Court in *Commonwealth v. Troutman*, 223 Pa.Super. 509, 302 A.2d 430 (1973), which denied a policeman the right to make a citizen's arrest outside the jurisdiction in which he was employed, has been severely criticized. See: *People v. Marino*, 80 Ill.App.3d 657, 663–665, 36 Ill.Dec. 71, 76–77, 400 N.E.2d 491, 496–497 (1980). See also: *Commonwealth v. Harris*, 11 Mass. App. 165, 415 N.E.2d 216, 221–222 n. 7 (1981). An impressive line of cases decided by the federal courts and the courts of sister states holds that an extraterritorial arrest made by a police officer lacking official authority to arrest will be sustained if it was a valid "citizen's arrest" under the circumstances. See: *United States v. Swarovski*, 557 F.2d 40, 46–47 (2d Cir.1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978); *Ward v. United States*, 316 F.2d 113, 116–118 (9th Cir.), *cert. denied*, 375 U.S. 862, 84 S.Ct. 132, 11 L.Ed.2d 89 (1963); *State v. McCullar*, 110 Ariz. 427, 428, 520 P.2d 299 (1974); *People v. Monson*, 28 Cal.App.3d 935, 939–940, 105 Cal.Rptr. 92 (1972); *State v. Shipman*, 370 So.2d 1195, 1196 (Fla.Dist.Ct.App.1979); *State v. O'Kelly*, 211 N.W.2d 589, 595 (Iowa 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *State v. Shienle*, 218 Kan. 637, 640, 545 P.2d 1129 (1976); *State v. Jones*, 263 La. 164, 174–175, 267 So.2d 559 (1972); *Stevenson v. State*, 287 Md. 504, 510, 413 A.2d 1340 (1980); *People v. Bashans*, 80 Mich.App. 702, 713, 265 N.W.2d 170 (1978); *State v. Fritz*, 490 S.W.2d 30, 32 (Mo.), *cert. denied*, 411 U.S. 985, 93 S.Ct. 2282, 36 L.Ed.2d 962 (1973); *State v. McCarthy*, 123 N.J.Super. 513, 517, 303 A.2d 626 (1973); *State v. MacDonald*, 260 N.W.2d 626, 627 (S.D.1977); *State v. Harp*, 13 Wash.App. 239, 242, 534 P.2d 842 (1975).